658 S.E.2d 539

**Randy P. SILVER, Respondent,**

v.

**AABSTRACT POOLS & SPAS, INC., Appellant.**

No. 4334.

Court of Appeals of South Carolina.

Heard Nov. 6, 2007.

Decided Jan. 16, 2008.

Rehearing Denied March 25, 2008.

586

Michael Stephen Chambers, of Greenville, for Appellant.

David G. Ingalls, of Spartanburg, for Respondent.

HEARN, C.J.:

Randy Silver (Homeowner) brought an action against Aabstract Pools and Spas, Inc. (Contractor) for breach of contract and conversion. Contractor asserted affirmative defenses and counterclaimed for breach of contract and attorneys' fees. With the consent of the parties, the circuit court referred the

matter to the Master–in–Equity who concluded the payment provisions of the contract were ambiguous. The master ruled in favor of Homeowner on the breach of contract claim and awarded him compensatory damages of $30,000. Contractor appeals. We reverse and remand.

## FACTS

On April 11, 2002, Contractor and Homeowner [1] executed a five-page contract requiring Contractor to construct and install a swimming pool, spa, and water feature at Homeowner's residence for a price of $69,742. The parties' contract contained five labeled sections: (1) **General Specifications:** duties Contractor was required to perform; (2) **Miscellaneous:** duties Homeowner was required to perform, including excavating rock, hauling dirt, masonry work, landscaping, etc; (3) **Payment:** Homeowner was required to make five separate payments to Contractor upon completion of five corresponding tasks; (4) **Agreed Conditions:** twenty-five (25) specific conditions mutually agreed to by the parties; and (5) **Witnesseth:** a reiteration of Contractor's promise to construct the pool and Homeowner's promise to pay $69,742 "at the five intervals in accordance with the schedule of values." The parties initialed and dated each page of the contract.

The relevant contract language provides:

*Payment:*

Time is of the essence, the work progress payments specified shall be the essence of this agreement.

| Schedule of values | | Total contract price $69,742.00 |
|---|---|---|
| Deposit | due upon signing contract | $ 6,974.20 |
| Phase 1 | due upon completion of dig | $27,896.80 |
| Phase 2 | due upon completion of shoot | $17,435.50 |
| Phase 4 | due upon completion of deck pour | $13,948.40 |
| Final | due at completion | $ 3,487.10 |

... The cost plus work is due at completion of the item.

---

1. Homeowner is a college-educated, residential contractor who has built approximately 2,000 homes in the Spartanburg area that range in price from $130,000 to $650,000. He has over thirty years of experience working as a contractor.

*Agreed Conditions:* ... (14) ... If work progress payments are not made in full by the [Home]owner in the amount and in the manner specified in this agreement, all work by Contractor[ ] and his agents will immediately cease and all equipment ... will be removed from the pool site by Contractor.... [Home]owner shall pay to Contractor all reasonable attorney fees & all costs & expenses incurred to collect any sums past due from [H]omeowner including but not limited to all court costs.

Homeowner paid Contractor the deposit on April 11, 2002, as specified. Contractor completed the Phase 1 digging work and, on April 24, 2002, Homeowner paid Contractor the specified payment. Next, Contractor completed the Phase 2 shoot[2] and, on May 16, 2002, Homeowner paid Contractor the specified payment. Contractor then completed the Phase 4 deck pour; however, Homeowner refused to pay Contractor the specified payment of $13,948.

After Homeowner refused to pay Contractor for his Phase 4 work, their contractual relationship reached an impasse with Homeowner owing Contractor $19,345.[3] Pursuant to paragraph 14 of the Agreed Conditions, Contractor suspended work on the job and removed his equipment from the site.[4] Homeowner made no further payments to Contractor and did not contact him for nine months.

By a letter dated March 13, 2003, Homeowner's attorney proposed that his client put $18,000 into the attorney's trust fund for payment to Contractor upon completion of the pool project. Contractor did not accept Homeowner's offer.

---

2. A "shoot" is a term for the installation of a pool's inner shell.

3. Contractor alleged Homeowner also did not pay invoices of $5,397 for additional work performed under the contract, including: $3,688 for specialized excavation necessitated by uncovered conditions, authorized by paragraph 7 of the Agreed Conditions; $420 for an extra load of concrete; and $1,289 for enlarging the pool deck.

4. Contractor claims Homeowner owed him $22,833. Contractor testified he considered pursuing Homeowner to recover the outstanding balance under the original contract ($17,436) and the amount past due for additional work performed ($5,397). However, after comparing the payments Contractor had received to date ($52,306) with his direct costs and overhead, he found he was "basically at a break-even point at that time, and it wasn't worth pursuing" an action against Homeowner.

Homeowner commenced this action for breach of contract and conversion. Contractor answered, pleading affirmative defenses [5] and asserting a counterclaim for breach of contract and attorneys' fees.

Following a bench trial, the master concluded the contract language stating Homeowner's payment obligations under the contract was "at best, ambiguous," and that any ambiguity must be construed against Contractor, as drafter of the contract. The master entered judgment in favor of Homeowner on the breach of contract claim and awarded compensatory damages of $30,000. The master denied Homeowner's conversion claim and Contractor's counterclaim. Subsequently, the master denied Contractor's motion to reconsider, alter or amend the order. This appeal followed.

## STANDARD OF REVIEW

An action to construe a contract is an action at law. *Pruitt v. S.C. Med. Malpractice Liability Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). Likewise, "[a]n action for breach of contract seeking money damages is an action at law." *R & G Constr., Inc., v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 430, 540 S.E.2d 113, 117 (Ct.App. 2000). When reviewing a judgment made in a law case tried by a master without a jury, the appellate court will not disturb the master's findings of fact unless the findings are found to be without evidence reasonably supporting them. *See Karl Sitte Plumbing Co., Inc. v. Darby Dev. Co. of Columbia, Inc.*, 295 S.C. 70, 77, 367 S.E.2d 162, 166 (Ct.App.1988). However, "[a] reviewing court is free to decide questions of law with no particular deference to the trial court." *Hunt v. S.C. Forestry Comm'n*, 358 S.C. 564, 569, 595 S.E.2d 846, 848–49 (Ct.App. 2004).

## LAW/ANALYSIS

### I. Ambiguity of Contract Language

Contractor first argues it was an error of law for the master to find that the payment terms of the contract were ambiguous. We agree.

---

5. Contractor alleged, pursuant to the conditions of their contract, that Homeowner's failure to pay for the completed Phase 4 work justified his suspension of work.

"It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Natural Res. v. Town of McClellanville,* 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001). In determining as a matter of law whether a contract is ambiguous, the court must consider the contract as a whole, rather than deciding whether phrases in isolation could be interpreted in various ways: "[O]ne may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.,* 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976). "Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.,* 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975).

Homeowner argues he was justified in refusing to pay Contractor for the deck pour because the payment terms of the contract were ambiguous. However, Homeowner cannot create ambiguity when it does not exist within the four corners:

> In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument, and when such contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed. Hence words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed.

*McPherson v. J.E. Sirrine & Co.,* 206 S.C. 183, 204, 33 S.E.2d 501, 509 (1945).

Homeowner attempts to create ambiguity by arguing the contract language implies that actual "work progress" could be the parties' intended basis for calculating both the amount and scheduling of payments to Contractor. Additionally, he argues the contract language reasonably could be interpreted to imply that payments to Contractor could be proportionate to Homeowner's subjective perception of the "value" he had received.[6]

---

6. Homeowner cites *Webster's Ninth New Collegiate Dictionary* (1985) as an authority for his interpretation of the word "value" in the contract's

Homeowner acknowledges he complied with the payment schedule until Contractor demanded payment for the Phase 4 deck pour, stating he refused to make the Phase 4 payment because "he surmised the pool was only twenty percent (20%) complete . . . [and he] refused to send additional monies until the percentage of completion more closely equaled the money paid." In contrast, Contractor points to the four corners of the contract and argues Homeowner breached the contract by failing to pay for Phase 4 after the deck pour was completed. Contractor strengthens this position by referring to paragraph 14 of the Agreed Conditions that expressly authorized Contractor to cease work if Homeowner failed to pay for completed work according to the specified schedule.

Here, we find the language of the contract is clear and unambiguous. *See Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) ("A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business."). Read as a whole, the contract states that Homeowner is required to make five specific payments, each corresponding to Contractor's performance of a specific task. This payment schedule is explicitly explained in the section labeled "Payment" and is later reinforced, both in paragraph 14 of "Agreed Conditions" and in the final section of the contract. Homeowner's actions in making the first three payments according to the schedule set forth in parties' written contract indicates that Homeowner and Contractor shared a common understanding of the payment terms.

Because we find this contract is clear, explicit, unambiguous, and capable of only one reasonable interpretation, the court does not look beyond the four corners to discern the parties intentions. *See Keith v. River Consulting, Inc.*, 365 S.C. 500, 506, 618 S.E.2d 302, 305 (Ct.App.2005) (explaining parol evidence is admissible to discover the parties intentions when a contract is silent regarding a particular issue). Therefore, we

---

Schedule of Values, stating that definition two defines "value" as "a fair return or equivalent in goods."

reverse the masters finding that the contracts payment terms were ambiguous.

## II. Breach of Contract

Next, Contractor argues there was no evidentiary support for the master's finding that Contractor breached the parties' contract. We agree.

■■■■ "[E]vidence that a party complied with the terms of the alleged contract or acted in conformity therewith is relevant and admissible on the issues of the contract's existence, the meaning of its terms, and whether the contract was breached." *Conner v. City of Forest Acres*, 363 S.C. 460, 473, 611 S.E.2d 905, 912 (2005). The failure to pay an instal[l]ment of the contract price as provided in a building or construction contract is a substantial breach of the contract, and gives the contractor the right to consider the contract at an end, to cease work, and to recover the value of work already performed. *Zemp Constr. Co. v. Harmon Bros. Constr. Co.*, 225 S.C. 361, 366, 82 S.E.2d 531, 533 (1954).

■■■■ Here, Homeowner paid the first three installments as scheduled under the contract terms, yet he refused to make the Phase 4 installment after the deck was poured. Homeowner explains he refused to make the Phase 4 payment because the project was, in his opinion, only twenty percent complete. However, Homeowner is not permitted to reinterpret written contract terms midstream because he is unhappy with the contract he executed. *See Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct.App.2007) ("Parties [to a contract] are governed by their outward expressions and the court is not at liberty to consider their secret intentions."); *Bannon v. Knauss*, 282 S.C. 589, 593, 320 S.E.2d 470, 472 (Ct.App.1984) ("Interpretation of the contract is governed by the objective manifestation of the parties' assent at the time the contract was made. It does not depend on the subjective, after the fact meaning one party assigns to it."). We find Homeowner's failure to make the Phase 4 installment payment constitutes his substantial breach of the parties contract.

### III. Damages for Breach of Contract

██ Because Homeowner was the first party to breach the contract, we find he must bear the liability for his nonperformance. "Where a contract is not performed, the party who is guilty of the first breach is generally the one upon whom all liability for the nonperformance rests." *Willms Trucking Co., Inc. v. JW Constr. Co., Inc.,* 314 S.C. 170, 178, 442 S.E.2d 197, 201 (Ct.App.1994); *see also Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994) ("When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect. The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully."). Accordingly, pursuant to paragraph 14 of the Agreed Conditions of the parties' contract, we find Contractor is entitled to attorneys' fees and court costs, and remand this issue for a determination of reasonable fees and costs.

**REVERSED and REMANDED.**

KITTREDGE, J., and THOMAS, J., concur.