682 S.E.2d 788

**Ann G. DUNCAN, as Personal Representative of the Estate of Frankey Galloway, deceased, and Cleo Galloway**

**v.**

**Samuel D. LITTLE, personally and as Personal Representative of the Estate of Joseph A. Galloway, a/k/a Avery Galloway, deceased; Betty Joy L. Iannazzone, personally and as Personal Representative of the Estate of Joseph A. Galloway, a/k/a Avery Galloway, deceased; The Estate of Joseph A. Galloway, a/k/a Avery Galloway, deceased; and SunTrust Banks, Inc., formerly Central Carolina Bank, a/k/a CCB, Defendants,**

**Of whom SunTrust Banks, Inc., formerly Central Carolina Bank, a/k/a CCB, is Respondent.**

**No. 26698.**

Supreme Court of South Carolina.

Heard April 7, 2009.

Decided Aug. 10, 2009.

Larry Brandt, of Walhalla, for Appellants.

Bernie W. Ellis, of McNair Law Firm, of Greenville and Robert L. Widener, of McNair Law Firm, of Columbia, for Respondent.

Justice KITTREDGE.

This direct appeal arises out of an action brought by Appellants Frankey Galloway[1] and Cleo Galloway against Respondent SunTrust Bank involving its surrender of the contents of two safe deposit boxes. This matter was tried before a Special Referee, who dismissed Frankey and Cleo Galloway's claims against SunTrust Bank. The Galloway brothers appeal the trial court's dismissal of their claims against SunTrust Bank. We find SunTrust Bank breached a duty owed to Cleo Galloway and reverse.

## I.

### FACTUAL/PROCEDURAL BACKGROUND

In June 2003, Frankey Galloway, aging and paraplegic, was admitted into a nursing home while being treated for an illness. Frankey had stored in excess of $250,000 cash throughout his home. Away from his home, Frankey was concerned for the safety of his money and asked his brother Cleo Galloway to collect the money and store it in a safe deposit box. Cleo went to Frankey's home, found the cash in the locations Frankey described, and took it home where he counted it in the presence of his wife and daughter.

---

1. Frankey Galloway died during the pendency of this appeal and his personal representative, Ann G. Duncan, has been substituted.

The precise amount of cash found in Frankey's home was $253,843. Frankey confirmed to Cleo that the cash found matched his expectation of the stored cash. Cleo placed the cash in a safe deposit box at a Wachovia Bank branch in Pickens, South Carolina.

Frankey did not approve of the selection of Wachovia Bank and so informed Cleo. Cleo removed the cash from the Wachovia safe deposit box. Cleo took the cash to the home of Avery, the third Galloway brother, where the two counted it once again. Frankey's money was taken to SunTrust Bank[2] (the Bank) and placed in two safe deposit boxes. Cleo and Avery were listed on the safe deposit box lease agreements as co-lessees and were issued four keys, two for each box.

In August 2004, Frankey was released from the nursing home and Cleo and Avery gave him the keys to the safe deposit boxes.

On November 24, 2004, Avery died. In accordance with Avery's will, his stepson Sammy Little (Sammy) and step-daughter Betty Joy Iannazzone (Joy) were appointed personal representatives of his estate. Within a week of Avery's passing, Sammy and Joy went to the Bank to ask if Avery had any accounts. Sharon Hamilton, a customer service representative, informed them that Avery and Cleo were co-lessees of two safe deposit boxes. Hamilton instructed Sammy and Joy that if they wanted to access the boxes, they should get the keys from Cleo.

Sammy made no effort to contact Cleo or otherwise obtain the safe deposit box keys. A few days later, Sammy informed Hamilton that the keys could not be located. Relying on the "Lost Keys" provision in the lease agreement, Hamilton arranged for the boxes to be drilled opened. No notice was given to Cleo.

The safe deposit boxes were drilled open on December 1, 2004. Present on December 1 were Hamilton, Sammy and Joy. Hamilton presented Sammy and Joy with the Bank's forms entitled: "Drilling Certificate of Inventory Affidavit" and "Inventory of Contents of Safe Deposit Box." On the drilling certificate form, the "lessee signature" line was left

---

2. At the time, SunTrust was known as Central Carolina Bank ("CCB").

blank. On the inventory form, Sammy signed as "surviving co-lessee witnessing the qualified person making the inventory of the box." Sammy and Joy left the Bank with the cash from both boxes and absconded with the money.

In February 2005, Frankey and Cleo went to the Bank to withdraw a portion of Frankey's cash. Only then did Frankey and Cleo learn that the safe deposit boxes were closed and that Sammy and Joy had taken the money.

Frankey and Cleo filed a complaint alleging claims against Sammy and Joy[3] as well as claims against the Bank. The parties consented to try the case before a Special Referee, who entered an order of judgment denying and dismissing Frankey and Cleo's claims against the Bank. Frankey and Cleo appeal the trial court's dismissal of their claims.

## II.

### ISSUE

Did the Bank violate a duty to Frankey or Cleo Galloway by releasing the contents to Sammy and Joy without notice to Cleo?

## III.

### STANDARD OF REVIEW

An action to construe a contract is an action at law. *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). In resolving this appeal, we must construe the lease agreement[4] between Cleo and Avery and the Bank. Where a contract is unambiguous, the matter becomes one of law and the parties' intent as clearly set forth in their agreement must be given effect. *See McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d

---

3. Frankey and Cleo's lawsuit against Sammy and Joy sought to impose a constructive trust upon them for absconding with the cash. The trial court granted the relief and in a companion appeal we affirmed the imposition of a constructive trust. *Duncan v. Little (Duncan I)*, Op. No. 09–MO–040 (S.C. Sup.Ct. filed July 20, 2009).

4. We note that two safe deposit boxes were leased, but the Bank's standard lease agreement applied to both. Hence our reference to lease agreement in the singular.

571, 574 (2009) ("Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect."). Conversely, where a contract is ambiguous, the fact finder must ascertain the parties' intentions from the evidence presented. *Charles v. B & B Theatres, Inc.*, 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959) ("[W]hen the written contract is ambiguous in its terms . . . parol and other extrinsic evidence will be admitted to determine the intent of the parties."). "In an action at law, tried without a jury, the trial court's findings of fact will not be disturbed unless found to be without evidence which reasonably supports the court's findings." *Stanley v. Atl. Title Ins. Co.*, 377 S.C. 405, 409, 661 S.E.2d 62, 64 (2008).

## IV.

### Law/Analysis

### A.

■ The Bank first argues it breached no duty to Frankey, for Frankey was not a party to the safe deposit box lease agreement. We agree and affirm the trial court with respect to Frankey's claim pursuant to Rule 220(c), SCACR.

### B.

■ Cleo asserts the Bank breached a duty owed to him under the lease agreement. The Bank counters that the lease agreement grants each co-lessee an absolute right of access to the safe deposit box. In this regard, the Bank contends a personal representative of a deceased lessee has the right to "stand in the shoes" of the decedent. The Bank's position has initial traction based on the following general lease provision:

*Co–Lessees*

A Box taken in the name of two or more Lessees, as co-Lessees, is under the control of each of them as fully as if it stood in each Lessee's name alone. Either co-Lessee may have access alone, may surrender the Box and terminated [sic] the Agreement, may appoint attorneys-in-fact to have access and/or surrender the Box, and may cancel any such appointment made by either co-Lessee.

The lease agreement, however, further provides explicit instructions regarding a "lost keys" situation:

*Lost Keys*

If Lessee loses one or both keys to the Box, Lessee shall notify Lessor immediately. Lessee shall pay all costs and expenses related to the loss of any of the keys to the Box; specifically including, but not limited to, the costs incurred in the following:

i. If Lessee loses one (1) of Lessee's keys to the Box, Lessee shall bring the remaining key to Lessor's office or branch where the Box is located so that the Box may be opened and the lock changed.

ii. If Lessee loses all of Lessee's keys to the Box, the Box must be forcibly broken and/or drilled open and the lock changed in the presence of the Lessee for which the Lessee is responsible for all fees and charges associated with the drilling.

Significantly, the lease agreement specifies that "[a]ll reference to singular shall also mean plural." When read in conjunction with the "lost keys" section, we find that the language of the lease agreement requires that all lessees must be present when a box is forcibly opened or drilled.

We reject the suggestion of an ambiguity. In any event, were we to entertain the idea of an ambiguity, such ambiguity would have to be construed against the Bank which drafted the agreement. *Williams v. Teran, Inc.,* 266 S.C. 55, 60, 221 S.E.2d 526, 529 (1976) (noting the rule of contract interpretation that an ambiguous contract will be construed against the drafting party); *Chassereau v. Global Sun Pools, Inc.,* 373 S.C. 168, 175, 644 S.E.2d 718, 722 (2007) ("[A] court will construe any doubts and ambiguities in an agreement against the drafter of the agreement.").

Moreover, an ambiguity would allow resort to the Bank's own forms, which are manifestly at odds with the Bank's position. For example, the form entitled "Inventory of Contents of Safe Deposit Box" provides a signature block for a "surviving co-lessee." That signature block expressly provides that the signature of the "surviving co-lessee" is "[o]nly required if surviving co-lessee and the qualified person are not the same person." The Bank considered Sammy as the

"qualified person," yet Sammy was permitted to sign as the "surviving co-lessee." Cleo, as the surviving co-lessee, was entitled to notice and the right to be present at the inventory.

We agree with the Bank that a personal representative has a right under law to "stand in the shoes" of the decedent to claim personal property. *See* S.C.Code Ann. §§ 62–3–709; 62–3–711; 62–3–715 (2009). The more targeted question is whether the statutory powers granted to a personal representative permit greater powers than the decedent had when living. We answer the question no. Section 62–3–711(a) speaks directly to this in providing that "a personal representative has the same power over the title to property of the estate that an absolute owner would have." Accordingly, while a personal representative stands in the shoes of the decedent, the personal representative's shoes are no bigger than the decedent's. Because Avery (as a co-lessee) could not drill the safe deposit boxes without Cleo present, neither could Avery's personal representatives.[5]

Lastly, the Bank argues that it is protected by the "good faith" provision of the probate code. S.C.Code Ann. § 62–3–714 (2009) ("A person who in good faith either assists a personal representative or deals with him for value is protected as if the personal representative properly exercised his power."). We disagree. Cleo's direct claim against the Bank is premised on his contract with the Bank, not the propriety of the powers exercised by Avery's personal representatives. Because the Bank breached the lease agreement, the statutory good faith protection is not available.

## V.

### CONCLUSION

We affirm the trial court's dismissal of Frankey Galloway's claim against the Bank. We reverse the dismissal of Cleo Galloway's claim against the Bank and remand to the trial court for a determination of damages.

---

5. Had Sammy and Joy presented the safe deposit box keys along with proof of their appointment as personal representatives of Avery's estate, the lease agreement would have entitled them to access and possession of the contents of the safe deposit boxes.

428

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

WALLER, Acting Chief Justice, PLEICONES, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur.