688 S.E.2d 597

**W.L. MADDEN, Appellant,**

v.

**BENT PALM INVESTMENTS, LLC, Roger Douglas Brown, and Tom Williams, Respondents.**

**No. 4647.**

Court of Appeals of South Carolina.

Heard Oct. 7, 2009.

Decided Jan. 20, 2010.

---

460

Kenneth C. Hanson, Walter M. Riggs, both of Columbia, for Appellant.

Joseph G. Studemeyer, of Columbia, for Respondents.

THOMAS, J.

In this breach of contract action, W.L. Madden (Appellant) appeals the trial court's award of $1,449, arguing the trial

court erred in finding the contract between him and Bent Palm Investments, Inc., to be unambiguous. Appellant argues the court erroneously interpreted the contract and erred in finding him entitled to only $1,449. We affirm as modified.

## FACTS

In May of 2004, Appellant entered into an agreement with Bent Palm Investments, Inc. and its owners Roger Brown and Tom Williams (collectively Respondent). The agreement provided Respondent would finance the construction of a speculation house, to be performed by Appellant, at cost. The agreement also stipulated profits from the sale of the house would be split evenly between Appellant and Respondent. Pamela White, a realtor, drafted the agreement which left her with the responsibility of marketing and facilitating a purchase of the home.

The parties entered into an "investor-builder" agreement which provided in pertinent part:

The [parties] agree ... [that] Bent Palm Investments agrees to purchase lot # 340 ... [for] $36,750. Bent Palm Investments also agrees to provide the financing needed for building a custom-spec home to be built by [Appellant] at cost (supplies and labor). A plan for the house has been selected and reviewed by both [parties]. All additional costs to include drawing of plans, permits, tap fees, interest payments on loan, closing costs, realty fees, etc. will be added together and deducted from the gross sales price of the home. Net proceeds will be divided 50/50.... [Appellant] has estimated a cost per square foot of $72.50.... Any deviations from the plans or specs ... will need to be approved and signed off by [Respondent].... *ATTACHED IS AN ESTIMATED DRAW SCHEDULE AND COST SHEET*.

The attached sheet states:

THE DOLLAR AMOUNTS ARE BASED ON 2196[1] SQUARE FEET X $72.5/FOOT AND 286 SQUARE FEET

---

1. Respondent maintains and the trial court agreed that this is a typographical error and should read 2,198 square feet.

(FINISHED BONUS ROOM) $5,000 FOR A TOTAL OF $164,355 BUILDING COSTS.... OPTIONAL SCREEN PORCH COST $6,000 (NOT INCLUDED IN ABOVE FIGURES).

The architect's drawings were affixed to the agreement and originally indicated a front load garage with a heated square footage of 2,198 plus 286 for a bonus room. However, because the parties agreed to change the home to a side load garage, the total heated square footage of the house changed to 2,280, plus 286 square feet for the bonus room, a total increase of 82 heated square feet.

During the course of the construction, Appellant informed Respondent that the house could not be finished for the contract price of $164,355, and work ceased until an additional and unscheduled draw of $22,000 was paid to Appellant. After receipt of this unscheduled draw, Appellant completed construction, and Pamela White facilitated the purchase of the home for $272,525. Shortly after the closing, Appellant submitted an invoice to Respondent and demanded a second unscheduled draw of $20,205.94, claiming the actual construction cost of the house was $209,057.64. Having already paid all scheduled draws plus an additional $22,000 unscheduled draw, for a total of $188,851, Respondent anticipated the $272,525 sale of the home to yield a profit of $28,000, prior to receiving the invoice for a second unscheduled draw. Respondent refused to pay the second unscheduled draw, and Appellant commenced this action for breach of contract, inter alia.

After a bench trial, the court held: (1) Appellant was entitled to total construction expenses in the amount of $176,300, determined by the original $164,355 agreed upon, plus $6,000 for the addition of a screened porch, plus an additional $5,945 for the 82 square foot modification at the estimated price of $72.50/square foot; (2) the total profit of the project was $28,000 to which Appellant was entitled to one half, in the amount of $14,000; (3) because Appellant was entitled to $176,300 in expenses and $14,000 in profits under the contract, Appellant was entitled to a total sum of $190,300; and finally (4) because Appellant had already received $188,851, this left a difference of only $1,449. Accordingly, the

trial court's ruling left the remaining $26,551, of the $28,000 in claimed profit, to Respondents.

## ISSUES ON APPEAL

I. Did the trial court err in failing to find the contract ambiguous and consequently construing the agreement to be a contract for a fixed price?

II. Did the trial court err by deducting the final outstanding expenses from the Appellant's share of the profits, or in other words, did the trial court err in interpreting the agreement so as to award Appellant only $1,449?

### STANDARD OF REVIEW

▉ A breach of contract action is an action at law. *Silver v. Aabstract Pools & Spas, Inc.*, 376 S.C. 585, 590, 658 S.E.2d 539, 541–42 (Ct.App.2008); *Conway v. Charleston Lincoln Mercury Inc.*, 363 S.C. 301, 305, 609 S.E.2d 838, 841 (Ct.App.2005). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec–Fab, Inc.*, 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009). Accordingly, "[this] Court will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Id.*

### ANALYSIS

#### I. Ambiguity of the Contract and Interpretation of Costs

Appellant alleges the trial court erred in failing to find the contract ambiguous, and as a result erred in reading the contract as a construction contract at a fixed price. We disagree.

▉ "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). The language alone will determine the contract's force where such language is unambiguous; however, where the language is subject to multiple interpretations, the fact finder must determine the

parties' intentions from the evidence presented. *Compare Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (stating that where the language is clear and unambiguous the intent of the parties is to be derived from the language of the contract) with *Charles v. B & B Theatres, Inc.*, 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959) (finding that when the contract is ambiguous in its terms other evidence must be considered to ascertain the intent of the parties). A party may not create an ambiguity by reading a single sentence or clause, but rather the contract and the language used must be considered as a whole. *Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134.

■ In this case, Appellant claims the crux of the parties' disagreement is that the agreement failed to designate the total square footage of the house and whether or not the parties intended the quoted amount of $72.50 per heated square foot or for total square footage under the roof. Appellant maintains that the price of $72.50 per square foot was intended to mean all square footage under the roof, which amounted to 3,140, including the screened porch, garage, and front porch, rather than simply heated square feet. However, we find there is evidence to support the trial court's ruling that Appellant is entitled to $176,300 for construction of the house at the stated rate of $72.50 per heated square foot.

Initially, the INVESTOR–BUILDER AGREEMENT clearly states a house plan had been reviewed and selected by the parties. Appellant had estimated the cost per square foot to be $72.50. Incorporated with the agreement is an ESTIMATED DRAW SCHEDULE AND COST SHEET. This document explicitly states the dollar amounts are based on 2,196 [2] at a price of $72.50 per square foot and a 286 square foot bonus room at an additional $5,000, for a total of $164,355. The sheet also provides an option for the addition of a screened porch for an extra $6,000.

Contrary to Appellant's position, review of the contract and attached documents yields no ambiguity. Initially, the original architect's plans for the selected house delineated a heated square footage of 2,198 with the addition of a 286 square foot bonus room. Considering that the bonus room and screened

---

**2.** Respondent claims this is a typo and should actually read 2,198 square feet, and points to the architect's plans to demonstrate.

porch were addressed and provided for separately under the agreement, and the square footage referenced in the original architect's plans mirrored (within 2 square feet) that referenced in the agreement and the draft sheet, the trial court's determination that this contract was to be calculated based on heated square footage is supported by the evidence.

 Moreover, the record supports the trial court's conclusion that Appellant was entitled to total costs in the amount of $176,300. First, the parties agreed to change the garage to a side load, rather than a front load. This change increased the total heated square footage of the house by 82 square feet. Therefore, at the agreed upon rate of $72.50 per square foot, Appellant was entitled to an additional $5,945. Furthermore, Appellant constructed the optional screened porch, entitling him to $6,000. In total, these figures coupled with the $5,000 for the bonus room, result in Appellant being entitled to $176,300 [3] in expenses.

 The Appellant also claims the trial court erred by ignoring a sentence in the agreement which reads: "Some costs may vary up or down." However, as even Appellant indicates in its brief on appeal, "the parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Thomas–McCain, Inc. v. Siter*, 268 S.C. 193, 197, 232 S.E.2d 728, 729 (1977). Accordingly, the sentence must be read in the larger context in which it appears. The full paragraph reads:

> Builder has estimated a cost per square foot of $72.50. A Specifications and Allowances sheet has been provided. These are general standards used in building and some may not apply to this building job should the plan not call for it. *Some costs could vary up or down.* Should there be an unreasonable increase the Investors (Respondent) will be notified accordingly to make the final decision. The draws will be made according to the draw schedule and will be followed closely. This will help in keeping us within our budget.

(emphasis added).

This section serves to bolster that building expenses were to be based upon $72.50 per square foot, as all parties agreed to

---

**3.** $159,355 + 5,000 + 5,945 + 6,000 = 176,300$.

follow the draw schedule as closely as possible, which is based on that amount. It also makes clear the phrase "[s]ome costs could vary up or down" is referring to the items on the specifications and allowances sheet. Thus, Appellant's contention that this phrase creates an ambiguity as to the appropriate expense per square foot is unfounded. Rather, there is ample evidence to support the trial court's interpretation of the contract.

Appellant next argues that the trial court erred by failing to interpret the contract against Respondent; however, because there is no ambiguity in the contract, this court need not address this argument. *See Duncan v. Little,* 384 S.C. 420, 426, 682 S.E.2d 788, 791 (2009) (indicating that only when the contract is deemed ambiguous will the rule of contract interpretation mandating construction against the drafting party be employed).

Accordingly, the trial court did not err in finding Appellant entitled to $176,300 in costs.

## II. Reduction of Appellant's share of profits

Next Appellant alleges that the trial court erred in awarding only $1,449. We agree.

■ Construction and interpretation of a clear and unambiguous contract is a question of law for the trial court to determine. *Bowen v. Bowen,* 345 S.C. 243, 249, 547 S.E.2d 877, 880 (Ct.App.2001).

■ Appellant argues that the trial court erred by inexplicably deducting $12,551 from his $14,000 share of the profits, effectively awarding $26,551 of the $28,000 in claimed profits to Respondent.

Initially, we note the trial court's deduction of $12,551 is not inexplicable; however, it is nonetheless an erroneous interpretation of an unambiguous contract. In this case, the trial court found, and we agree, that the contract entitled Appellant to $176,300 in expenses, but instead, he was paid and received $188,851. The trial court calculated the difference between these amounts and determined that Appellant had received $12,551 in excess of what he was entitled. Accordingly, the trial court halved the $28,000 in profits, and then reduced

Appellant's $14,000 share by $12,551, arriving at a total entitlement of $1,449. Put another way, the trial court found that Appellant was entitled to $176,300 plus a $14,000 share of profits, for a total entitlement of $190,300, of which he had received $188,851, leaving a difference of $1,449.

However, the trial court's interpretation does not consider that profits of $28,000 were calculated after having paid Appellant $188,851, of which $12,551 he was not entitled to receive. The contract indicates profit is dependent upon the amount of costs Appellant is entitled to under the contract; profit is not a fixed amount. Here, the agreement unambiguously provides Appellant is entitled to $176,300 "plus one-half profits;" however, the trial court interpreted the contract as entitling Appellant to $176,300 plus one-half of $28,000.

The agreement stipulates each party was to receive one-half of profits, not one-half of $28,000; therefore, it is significant that Appellant received $12,551 in excess of the $176,300 he was entitled to under the contract. Because the $12,551 "expense" should not have been paid by Respondent, the $28,000 profit figure was artificially deflated by $12,551 [4]. Consequently, each party is entitled to one-half of $40,551 ($28,000 + $12,551). Therefore, Appellant should receive $176,300 plus "one-half of profits" ($20,275.50) for a total amount of $196,575.50, not $176,300 plus $14,000 as the trial court interpreted the agreement.

As noted, Appellant has already received $188,851 of the $196,575.50 due him. Thus, he remains entitled to the difference of $7,724.50. Accordingly, the order of the trial court is modified to award Appellant $7,724.50 rather than $1,449.[5]

## *CONCLUSION*

Although we do not find the contract to be ambiguous, we do find error in the trial court's interpretation of the unambig-

---

4. Put in mathematical terms; because all expenses are paid and undisputed, it remains Appellant was paid $188,851, and Respondent possessed $28,000 in residual monies. Therefore, $216,851 ($188,851 + $28,000) represents proceeds. Because Appellant is entitled to $176,300: $40,551 ($216,851–$176,300) represents the amount remaining after all expenses are paid.

5. For the reasons above, Appellant's argument that he is entitled to a full $14,000 share of the profits fails.

uous contract to find Appellant entitled to expenses plus $14,000 or $1,449. Rather, the appropriate interpretation demonstrates Appellant is entitled to $7,724.50, and we herein modify the trial court's order accordingly. Therefore, the ruling of the trial court is

**AFFIRMED AS MODIFIED.**

HUFF, A.C.J. and PIEPER, J., concur.