693 S.E.2d 441

**The STATE ACCIDENT FUND, Appellant,**

**v.**

**SOUTH CAROLINA SECOND INJURY FUND, Respondent.**

**[In re Clinton Gaskins, Employee/Claimant,**

**v.**

**Pee Dee Regional Transportation Authority, Employer.]**

**No. 4684.**

Court of Appeals of South Carolina.

Heard April 15, 2010.

Decided May 5, 2010.

68

Mary Sowell League, of Columbia, for appellant.

Latonya D. Edwards, of Columbia, for respondent.

PER CURIAM.

The State Accident Fund (Carrier) sought reimbursement from the South Carolina Second Injury Fund (the Fund) for monies Carrier paid to Clinton Gaskins for a stroke he suffered during surgery for a work-related back injury. The Fund and the single commissioner denied Carrier's claim as it related to monies paid for the stroke. Both the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) and the circuit court affirmed. We affirm.

### FACTS

On January 30, 2002, while employed by Pee Dee Regional Transportation Authority, Gaskins suffered a work-related back injury. Gaskins already suffered from degenerative disk disease and stenosis of the lumbar spine. On May 9, 2002, Gaskins underwent surgery to treat his back problems. During this surgery, he suffered a stroke that resulted in permanent brain injury. Carrier initially denied coverage for the stroke as not causally related to the back problems, and Gaskins, his employer, and Carrier presented arguments to the single commissioner on the issue of causation.[1]

In the meantime, Carrier presented the Fund with its claim for reimbursement of monies paid for Gaskins's back surgery. On November 29, 2004, the Fund agreed to reimburse Carrier in an agreement that specified:

Nature of Injury: BACK

Nature of Prior Impairment: DDD/LUMBAR
    SPINAL STENOSIS/LUMBAR

The terms of this agreement are that the said STATE ACCIDENT FUND shall receive reimbursement of:

IN ACCORDANCE WITH THE PROVISIONS OF SECTION 42–9–400.

FOR THE LUMBAR SPINE ONLY

This agreement is in full and complete satisfaction of any and all claims by STATE ACCIDENT FUND against Second Injury Fund for the above referenced accident claim.

The Workers' Compensation Commission (Commission) approved this agreement. Neither party challenged the Commission's approval.

One month after Carrier and the Fund signed the Agreement to Reimburse (Agreement), the single commissioner issued an order finding the stroke was causally related to the back injury in the action involving Gaskins, his employer, and Carrier. On May 23, 2005, the single commissioner entered a consent order reflecting the agreement among Gaskins, his employer, and Carrier that Gaskins was entitled to $200,000

---

1. The Fund was not a party to this proceeding.

and all medical care causally related to his injuries. The Fund was not a party to this agreement.

Nearly two years later, on September 25, 2006, Carrier requested reimbursement under the Agreement for monies paid to Gaskins for the stroke he suffered during back surgery, which Carrier asserted was causally connected to the back injury. The Fund denied this request. At the hearing before the single commissioner, Carrier presented evidence from the previous hearing regarding Gaskins's treating physicians that supported its argument the stroke was causally related to the back surgery. In addition, Carrier argued it relied upon the Fund's past practice of including causally related injuries in those covered by its settlement agreements. Finally, Carrier questioned the validity of the Agreement based upon the Fund's change in practice and the fact only one commissioner, rather than a majority, approved the Agreement.[2] The Fund argued the medical reports did not establish a sufficient causal connection between the back injury and the stroke to justify amending the Agreement to cover the stroke. The single commissioner denied Carrier's claim on the basis that the Agreement's language excluded injuries other than to the lumbar spine and declined to reach the issue of causation. The Appellate Panel affirmed the denial.

Before the circuit court, Carrier argued the statute referenced in the Agreement covered causally related conditions. Because its refusal to amend the agreement represented a departure from the Fund's usual practice, Carrier argued, the Fund should be estopped from refusing to amend and the issue of causal relation should be litigated before the Appellate Panel. Furthermore, according to Carrier, the Appellate Panel committed reversible error by basing its decision upon an unpublished opinion of this court. The Fund protested that Carrier actually sought to void the contract. The circuit court affirmed the denial of Carrier's claim and denied Carrier's motion to reconsider this ruling. This appeal followed.

---

**2.** *See* S.C.Code Ann. § 42–9–400(j) (Supp.2009) (authorizing the Fund to enter into settlement agreements "at the discretion of the director with approval of a majority of the Workers' Compensation Commission").

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions of the Commission. *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct.App.2005). In reviewing decisions of the Commission, the appellate court must ascertain "whether the circuit court properly determined whether the [A]ppellate [P]anel's findings of fact are supported by substantial evidence in the record and whether the [Appellate P]anel's decision is affected by an error of law." *Baxter v. Martin Bros., Inc.,* 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006) (citations omitted); *see also* S.C.Code Ann. § 1–23–380(5) (Supp.2009) (establishing the standard for judicial review of agency decisions). Substantial evidence is not a mere scintilla of evidence, nor is it evidence viewed blindly from one side of the case; rather, it is "evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Liberty Mut.,* 363 S.C. at 620, 611 S.E.2d at 300. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* at 620, 611 S.E.2d at 301. Where conflicts in the evidence exist over a factual issue, the findings of the Appellate Panel are conclusive. *Id.* at 620, 611 S.E.2d at 301.

## LAW/ANALYSIS

### I.  Coverage of Stroke under the Agreement

Carrier asserts the circuit court erred in affirming the Appellate Panel's finding the Agreement did not cover Gaskins's stroke as a consequence flowing from the back injury. We disagree.

The Fund was established by statute and reimburses employers and insurance carriers after they pay certain claims. S.C.Code Ann. § 42–7–310 (Supp.2009). To qualify for reimbursement, an employer or carrier must timely provide the Fund with certain information. S.C.Code Ann. § 42–9–400(a), (c), (f), & (*l* ) (Supp.2009). When a permanently disabled employee:

[I]ncurs a subsequent disability from injury by accident arising out of and in the course of his employment, resulting in compensation and medical payments liability or either, for disability that is substantially greater and is caused by aggravation of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall pay all awards of compensation and medical benefits provided by this title; but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund. . . .

§ 42–9–400(a). "Permanent physical impairment" refers to "any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." S.C.Code Ann. § 42–9–400(d) (Supp.2009). If a claimant suffering from a permanent physical impairment most probably would not have suffered the subsequent injury " 'but for' the presence of the prior impairment," the Fund must reimburse an employer or carrier for properly requested compensation and medical benefits without regard to whether the liability is "substantially greater than that which would have resulted from the subsequent injury alone." S.C.Code Ann. § 42–9–400(g) (Supp.2009).

The Fund "shall not be bound as to any question of law or fact" determined in an agreement, award, or adjudication to which it was not a party or of which it had less than twenty days' notice. S.C.Code Ann. § 42–9–400(e) (Supp.2009). The Fund "can enter into compromise settlements at the discretion of the director with approval of a majority of the Workers' Compensation Commission, provided a bona fide dispute exists." S.C.Code Ann. § 42–9–400(j) (Supp.2009).

■ Section 42–9–400(a) mandates that Carrier "shall" pay for Gaskins's subsequent injuries and that the Fund "shall" reimburse Carrier for those payments. However, subsection (j) of the same statute enables the Fund to enter into compromise agreements with carriers limiting the Fund's obligations. Here, Carrier and the Fund entered into just such a compromise agreement as to the payments Carrier made related to Gaskins's back injury. The terms of the Agreement clearly

indicate the parties did not contemplate extending its coverage to any causally connected injuries that might have followed. Moreover, the record indicates at the time the Agreement was made, Carrier still disputed its liability for Gaskins's stroke. Although Carrier knew Gaskins was seeking coverage for the stroke, the single commissioner did not find Carrier liable for medical benefits related to the stroke until a month after the Agreement was made. At the time of the Agreement, Carrier knew the issue of its liability for the stroke remained unresolved. Had Carrier intended to seek reimbursement for stroke expenses from the Fund under the subject Agreement, it had ample opportunity to negotiate this issue with the Fund. However, the record does not indicate Carrier proposed adding to the Agreement any language addressing this issue or otherwise sought reimbursement from the Fund until two years later. Consequently, the circuit court did not err in affirming the Appellate Panel's exclusion of stroke-related expenses from the Agreement.[3]

## II. Voidness

Next, Carrier asserts the circuit court erred in failing to find the Agreement is void because no meeting of the minds occurred at the Agreement's inception. We disagree.

Whether the language of a contract is ambiguous is a question of law to be determined by the court from the terms of the contract as a whole. *Silver v. Aabstract Pools & Spas, Inc.,* 376 S.C. 585, 591, 658 S.E.2d 539, 542 (Ct.App.2008). In making this determination, the court must examine the entire contract and not merely whether certain phrases taken in isolation could be interpreted in more than one way. *Id.* " '[O]ne may not, by pointing out a single sentence or clause, create an ambiguity.' " *Id.* (quoting *Yarborough v. Phoenix*

---

3. We do not base this ruling upon the Fund's argument that this Agreement was a "clincher." By definition, a clincher agreement is a final release between the employer and employee. 25A S.C.Code Ann. Reg. 67–801(E) (Supp.2009). A court is without jurisdiction to review a clincher agreement that includes language precluding judicial review and that has been duly approved by the Commission. *Spivey ex rel. Spivey v. Carolina Crawler,* 367 S.C. 154, 159, 624 S.E.2d 435, 437 (Ct.App.2005). This Agreement, made between Carrier and the Fund, neither fits the definition of a clincher nor includes the necessary language depriving the court of jurisdiction.

*Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976)).

> "In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument, and when such contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed. Hence words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed."

*Id.* (quoting *McPherson v. J.E. Sirrine & Co.*, 206 S.C. 183, 204, 33 S.E.2d 501, 509 (1945)).

■ Carrier's argument is essentially that the Agreement should be void because the coverage language within it contains an ambiguity. Carrier avers it understood the coverage included both the lumbar spine and other causally related injuries because it believed the Fund covered other claimants' causally related injuries. The Fund argues the coverage was limited to the lumbar spine, only. The alleged ambiguity springs not from the terms of the Agreement itself, but from Carrier's observations of Fund behavior in matters unrelated to Gaskins's claims. According to Carrier, the Fund agreed to pay causally related expenses of other claimants after executing agreements similar to this one.[4] However, no evidence indicates that Carrier was a party to any of these other agreements or that the Fund represented to Carrier it would pay for Gaskins's stroke. Therefore, the circuit court did not err in refusing to declare the Agreement void.

## III. Estoppel

Carrier asserts the circuit court erred in failing to find the Fund is estopped from denying reimbursement for Gaskins's stroke. We disagree.

■ Courts apply the doctrine of equitable estoppel when one party, "by his actions, conduct, words or silence which amounts to a representation, or a concealment of mate-

---

4. This argument appears to be more in the nature of an estoppel argument.

rial facts, causes another to alter his position to his prejudice or injury." *Rushing v. McKinney*, 370 S.C. 280, 293, 633 S.E.2d 917, 924 (Ct.App.2006) (quoting *Hubbard v. Beverly*, 197 S.C. 476, 480, 15 S.E.2d 740, 741 (1941)). For equitable estoppel to apply, each party must meet certain criteria:

With regard to the party estopped, the elements of equitable estoppel are: (1) conduct amounting to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention or expectation that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. As related to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position.

*Id.* at 293–94, 633 S.E.2d at 924 (internal citations and quotations omitted). However, a court will not rescind a contract solely on the basis of unilateral mistake unless the party opposing rescission induced the mistake "by fraud, deceit, misrepresentation, concealment, or imposition ..., without negligence on the part of the party claiming rescission, or where mistake is accompanied by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement." *Truck South, Inc. v. Patel*, 339 S.C. 40, 49, 528 S.E.2d 424, 429 (2000).

Equitable estoppel applies when each party meets three conditions. *Rushing*, 370 S.C. at 293–94, 633 S.E.2d at 924. One of those conditions requires that the party to be estopped must have exhibited misleading conduct during formation of the agreement with the intent or expectation the complaining party would rely on it. *Id.* Here, Carrier argues the Fund should be estopped from limiting reimbursement to monies paid for Gaskins's back injury because the Fund did not notify Carrier that it ceased its practice of reimbursing for causally related injuries. However, Carrier failed to establish the Fund made any representations with regard to reimbursement for Gaskins's injuries other than those reflected in the Agreement. Carrier bases its estoppel argument on the

Fund's payment of other, unrelated claims. The details of these claims and of the Fund's reasoning in paying them are unknown. Furthermore, even if the Fund did suddenly change its policy, which it denies,[5] no evidence indicates the Fund did so with the intention of inducing Carrier to rely on its past behavior in making the subject Agreement. Rather, in this case, Carrier appears to have made a unilateral mistake in assuming the Fund would agree to cover benefits paid for the stroke under the current Agreement. *See Truck South,* 339 S.C. at 49, 528 S.E.2d at 429. Despite Carrier's argument to the contrary, strong and extraordinary circumstances militating in favor of rescission do not exist here. As a result, Carrier failed to establish the Fund's actions merited equitable estoppel, and the circuit court did not err.

## CONCLUSION

We find Carrier and the Fund executed an Agreement that clearly set forth the contours of their compromise agreement. Furthermore, we find that, despite having knowledge of the expenses and ample opportunity to request their inclusion, Carrier failed to seek inclusion of the stroke expenses in the terms of the Agreement. Therefore, we affirm the circuit court's decision that the Agreement did not cover Carrier's expenses flowing from Gaskins's stroke.

Next, we find the terms of the Agreement are clear and unequivocal. An ambiguity originating not in the terms of this Agreement but in Carrier's observations of Fund behavior in other, unrelated matters is not a legal basis for declaring the Agreement void. Accordingly, we affirm the circuit court's determination that the Agreement is not void.

Finally, we find Carrier failed to prove all necessary elements of its claim for estoppel. Consequently, we affirm the circuit court's refusal to apply equitable estoppel to this matter. For the foregoing reasons, the order of the circuit court is

**AFFIRMED.**

---

**5.** On appeal, the Fund asserts it does not have a custom or practice of reimbursing employers and carriers for expenses not indicated in its settlement agreements. However, the Fund admits that it agreed to amend some settlement agreements under certain circumstances.