## 17242

UNITED STATES RUBBER COMPANY (Fiske Tire Division), Plaintiff, v. WHITE TIRE COMPANY, Inc., et al., Defendants, wherein J. Wright Nash, as Receiver of White Tire Company, Inc., is Appellant, and Mrs. Louise Henderson McDavid is Respondent.

(97 S. E. (2d) 403)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Appellant,*

*Messrs. Holcombe & Bomar,* of Spartanburg, *for Respondent,*

December 31, 1956.

LEGGE, Justice.

This appeal involves the respective rights of a lessor and of the receiver of the lessee in a sum of money paid by the lessee to the lessor upon the execution of the lease as security for the lessee's performance of its obligations thereunder.

By written agreement dated November 6, 1951, Mrs. Louise Henderson McDavid, owner of a vacant lot in the City of Greenville, leased to White Tire Company, Inc., the said lot, together with the buildings and other improvements to be constructed by her thereon for a term of ten years to commence upon the completion of said building, the rental to be at the rate of $7,000.00 per year payable in monthly installments in advance on the first day of each month of the term. Paragraphs 8, 14, 15, and 18 of the lease were as follows:

"8. It is expressly agreed and und. rstood that the Lessor during the existence of this Lease shall maintain and keep in repair the roof and the outside of the building to be erected on the premises, and that the Lessee shall keep in repair and be responsible for the remainder of the property.

\* \* \*

"14. If the Lessee shall be adjudicated bankrupt, or if a Receiver be appointed for the property of the Lessee, or if it shall take or attempt to take the benefit of insolvency acts, statutes or laws now in force, or hereafter enacted, or shall make or attempt to make any assignment of property for the benefit of creditors, or if the interest of the Lessee under this Lease shall be levied upon by legal process, then and in that event this Lease shall terminate at once without notice of any kind to the Lessee or other persons, if the Lessor shall so elect, unless the said Lessee shall, before the Lessor exercises her option and right to terminate this Lease, give to the Lessor such security, satisfactory to the Lessor, as will fully guarantee the carrying out of the terms of this Lease and the payments therein provided.

"15. In case the property above described and the subject of this Lease shall be deserted or vacated, or if any default shall be made by the Lessee in any of the monthly payments herein provided for and required to be made, or if default be made by the Lessee in the faithful performance and carrying out of any of the covenants, agreements and conditions of this Lease, the Lessor shall have and is hereby given the right, without notice of any kind, to the Lessee or to any other person, to reenter said premises by force or otherwise and dispossess and remove therefrom the occupants thereof, and the Lessor may, at her option, either declare this Lease terminated or may pursue and enforce through legal proceedings or otherwise her legal rights as landlord or Lessor against a tenant in default.

\* \* \*

"18. Simultaneously with the execution of this Lease the Lessee is to pay to the Lessor the sum of Seven Thousand

($7,000.00) Dollars, the same to be held by the Lessor as security for the faithful performance of and compliance with all the terms, covenants and conditions of this Lease. The taking of said sum as security shall not, however, be construed as limiting or restricting the Lessor to this fund, but the Lessor may also pursue any remedy in law or in equity which the Lessor shall consider proper in order to protect her rights in the premises. If the Lessee shall faithfully comply with all the terms, covenants and conditions of this Lease, then it is agreed that the said sum of Seven Thousand ($7,000.00) Dollars shall be applied and credited by the Lessor on the beginning of the tenth year of this Lease as rent for the said tenth year. It is understood and agreed that if this Lease shall be terminated by reason of fire or other casualty as set out in paragraph 13 above, and the Lessee shall have complied with all terms and conditions of this Lease, the said sum of Seven Thousand ($7,000.00) Dollars deposited as security for faithful performance shall be returned to the Lessee, provided that if this Lease be so terminated by reason of fire or other casualty during the tenth year, then only so much or such part of said deposit as shall not have been applied to the payment of rent for the said year shall be returned to the Lessee."

White Tire Company made the payment required under Paragraph 18 and entered into possession on April 7, 1952, the building having been then completed. Thereafter, at the suit of a creditor, White Tire Company was placed in receivership in February, 1954. It had paid rent through March 6, 1954. It appears that White Tire Company had vacated the property in December, 1953, leaving its sub-lessee, Webster Oil Company, in possession of a portion of it. Webster Oil Company, having paid rent to Mrs. McDavid, at the rate provided in the lease, for the months ending April 6 and May 6, 1954, entered into a written agreement with her whereby it took over the premises for the remainder of the term of the original lease, and upon the same terms, except as below noted. This agreement was evidenced by the following letter and acceptance:

90

"Greenville, S. C.
"April 29, 1954

"Mrs. Louise H. McDavid,
"Greenville, S. C..
"Dear Mrs. McDavid:

"In re: Property at corner of Broadus Ave., and E. North Street, Greenville, S. C.

"The Webster Oil Company, Inc. of Greenville, S. C. under an agreement with White Tire Company, Inc. and for several months prior to its abandonment of the property described in your lease, has been operating the filling station on said property. We are interested in renting the whole property described in said lease upon the same terms as White Tire Company if you will agree to certain changes which are set out below.

"We would like to take over this property, the lease beginning May 7, 1954, and occupy it as tenant until the 6th day of April, 1962, which is the date of expiration of said lease.

"The Webster Oil Company does hereby expressly agree to take over the lease between you and White Tire Company, Inc. and will make all payments required to be made under said lease and perform and abide by all the terms and provisions and obligations of said lease, except as set out below herein.

"(1) It is understood that the building and improvements referred to in paragraphs No. 1 and 2 of the lease have been completed.

"(2) Paragraph No. 6 of the lease is to be changed to allow the tenant to make alterations and repairs to the buildings and, as changed, it shall read as follows:

" 'The Lessee is granted the right to make alterations or changes within or upon the leased premises at its expense and may construct additional buildings or installations on portions of the property now vacant, at its expense, subject to approval of Lessor, but all alterations, changes, additional buildings or installations shall belong to and be the property

of the Lessor and shall, upon the expiration of the lease, or its earlier termination for any cause, be delivered with the other leased premises to the Lessor'.

"(3) Paragraph No. 7 of the lease is to be changed to allow the tenant to sublet any portions of the leased premises, and, as changed shall read as follows:

" 'The Lessee is granted the right to sublet any portion of the leased premises but the Lessee shall remain bound to the Lessor for the full amount of rent. If any portion of the property shall be sublet, the tenant of the Lessee shall be bound by and subject to all the terms, provisions and requirements of this lease.'

"(4) There shall be added at the end of Paragraph No. 8 of the following:

" 'Except where damage results from construction defects in the present building'.

"(5) Paragraph No. 15 is changed so that the Lessee will not take action against the tenant in case of default in payment of rent until expiration of 30 days from date when rent falls due. In all other respects the paragraph remains unchanged.

"(6) Under Paragraph No. 18 of the lease, the Lessee is required to pay upon the execution of the lease the sum of $7,000.00 to the Lessor to be held as security and applied on the rent of the tenth year. It is understood that Webster Oil Company will not be required to make such deposit and that if before the commencement of the tenth year, Webster Oil Company shall present the Lessor satisfactory proof that neither J. R. White, individually nor White Tire Company, Inc., the original lessee, claims any interest in said $7,000.00 and that the Receiver of White Tire Company, Inc. does not claim any interest in said sum then, if all provisions of the lease shall have been carried out and all payments made by Webster Oil Company in accordance with the requirements of the lease the Webster Oil Company shall be entitled to have the said $7,000.00, less any expense incurred by the Lessor in connection with this item, applied

on the rent for the tenth year. It is also agreed that should the Webster Oil Company fail to furnish proof above stated within the time stated and any questions or litigation concerning the said $7,000.00 remain undecided, then Webster Oil Company will pay in cash the rental for the said tenth year. It is also understood and agreed that should it be adjudicated that the Lessor pay to the original Lessee or its receiver the said $7,000.00, then the Webster Oil Company shall pay the cash rental for the tenth year. The purpose of this agreement being to protect the Lessor against any loss of rental during the term of this lease, and that if no loss is suffered by the Lessor, Webster Oil Company may be benefited by the said $7,000.00 upon the terms herein stated.

"Yours very truly,

"Webster Oil Company

"(Sgd.) By W. M. Webster, Jr., Pres.

"The proposal and offer above set out is accepted this . . . day of April, 1954. (Sgd.) Louise H. McDavid."

In August, 1954, following the receiver's petition for instructions as to his rights with reference to the sum of $7,000.00 paid by White Tire Company to Mrs. McDavid as before mentioned, she was made a party and the matter was referred generally to the Master for Spartanburg County. Mrs. McDavid's contentions, as shown by her answer to the receiver's petition, were:

1. That White Tire Company had understood and agreed, at the time of its payment of the said sum of $7,000.00, that the same constituted payment of the tenth year's rent in advance, subject to the use of so much of said fund as might be required to make good any loss or damage resulting from default on its part.

2. That White Tire Company had understood and agreed, at the time of such payment, that the same was to be applied by the lessor against the cost of constructing the building that she was to erect for it on the said lot.

3. That under Paragraph 18 of the lease White Tire Company had no interest in the said fund, and would have none, except in case the leased premises should be destroyed by fire or other casualty.

4. That the lessee having abandoned the premises and defaulted in the payment of rent, and its receiver having declined to take over the lease, she had, after protracted negotiations and numerous conferences with her attorneys, finally secured Webster Oil Company as tenant for the remainder of the ten-year term; that rent had been paid to date; but that it was uncertain whether the new tenant could or would carry out the agreement to the end of the term.

The only witness before the Master was the lessor's husband who had been her agent throughout the whole transaction. His proffered testimony as to verbal understanding between the parties preceding the execution of the lease, with regard to use by the lessor of the $7,000.00 deposit, was objected to and properly excluded as incompetent. He testified that the lessor had lost no rent; that she was making no claim for loss or damage resulting from the default other than an item of $500.00 paid as attorney's fee to her counsel for his services in connection with the agreement with Webster Oil Company.

The Master held:

1. That the $7,000.00 deposit was not an absolute payment, but was a pledge intended to serve a dual purpose: primarily, during the first nine years of the term, as security for the lessee's faithful performance of its obligations under the lease; and, secondarily, conditioned upon the lessee's having performed its obligations during those nine years, it was to be applied at the beginning of the tenth year as rent for that year.

2. That the secondary purpose became inoperative so far as the lessee was concerned, by reason of its default; and, so far as the lessor was concerned, by reason of her re-entry and re-letting to Webster Oil Company.

3. That the lessee's default had resulted in no loss to the lessor; and that the fee of $500.00 paid to her attorney for services in connection with the re-letting was not recoverable as damages in such case, and was not a proper charge against the deposit.

4. That the lessor's re-entry and re-letting terminated the lease and absolved the original lessee from future obligation to her.

5. That the lessor's admitted use of the deposit to pay in part for the improvements erected by her on the lot was in breach of the terms of Paragraph 18 of the lease and amounted to conversion, entitling the receiver to judgment against her for $7,000.00 with interest from August 11, 1954, the date of service upon her of the rule to show cause issued on the receiver's petition, and to an equitable lien upon the premises, with right of foreclosure.

The lessor having excepted, the matter came on to be heard before the Honorable J. Robert Martin, Jr., presiding in the Seventh Judicial Circuit; and by his decree of March 16, 1956, from which this appeal comes, he:

1. Concurred in the Master's conclusion that the deposit of $7,000.00 had been as security for the faithful performance by the lessee of its obligations under the lease;

2. Reversed the Master's finding that the use of said deposit by the lessor in constructing the building was improper, and held that such use had been authorized and ratified by the lessee;

3. Reversed the Master's finding that the payment of $500.00 by the lessor to her attorney was not chargeable against the deposit, and held that it was a proper charge because it had not been paid "strictly for legal services as such, but was remuneration to the attorney for the time and effort spent by him in negotiating a new agreement";

4. Held that it could not be now determined what further damages, if any, the lessor would suffer prior to the expiration date of the original lease as a result of the lessee's

default; that therefore the receiver is not presently entitled to the return of the deposit, but, if no additional losses should be sustained by the lessor prior to the expiration date of the original lease, "has a valid claim for $6,500.00 against the lessor and her property"; and

5. Ordered that the cause remain open and under continued reference to the end that the parties might, upon proper notice seek clarification of any additional issues that might arise concerning the said fund, including any questions as to additional charges against it.

The receiver's appeal from the foregoing decree may be disposed of without separate discussion of his exceptions. In substance, they all charge error on the part of the Circuit Judge in his construction of the lease with regard to the $7,000.00 deposit, and in his determination of the rights and obligations of the parties concerning said deposit after the lessee's default and the lessor's re-entry.

The lease here was terminated by the lessor's re-entry and re-letting following the lessee's abandonment of the property and default in the payment of rent. Cf. Code 1952, §§ 41-65, 41-66. Upon such termination the relation of lessor and lessee, or landlord and tenant, came to an end. *Simon v. Kirpatrick,* 141 S. C. 251, 139 S. E. 614, 54 A. L. R. 1348. Thereafter White Tire Company had no further obligation to Mrs. McDavid for future rent; its liability to her was, and is, for damages resulting from its breach of the contract. The measure of such damages is the amount that she would have received as rent for the remainder of the term, had there been no default, less such amount as she may receive from the new tenant,—for it was her duty to minimize her damages. *Burkhalter v. Townsend,* 139 S. C. 324, 138 S. E. 34.

The lease must be construed as a whole in our endeavor to ascertain and, if possible, effectuate the intention of the parties with regard to the deposit required under Paragraph 18. *Brady v. Brady,* 222 S. C.

242, 72 S. E. (2d) 193. Viewing that paragraph in its relation to the others, especially Paragraphs 14 and 15, it seems clear that the deposit was intended to protect the lessor against any loss resulting from the lessee's default, whether such loss should be in respect of rent or maintenance during the lessee's occupancy or in respect of damages arising after such occupancy had come to an end. The circuit decree so held, in substance; and with that holding we concur.

Except for the payment to her attorney, the lessor claimed no damages sustained up to the date of the decree. What damages chargeable against the deposit, if any, she may sustain in the future cannot be ascertained until the expiration date of the original lease; and we think, therefore, that the Circuit Judge properly ordered that the cause remain open and under reference for the purpose of determining any questions that may hereafter arise in that regard.

We do not agree with the lower court in its finding that the payment of $500.00 by the lessor to her attorney is chargeable against the deposit. Had the lessor paid or become obligated to pay commission to a real estate agent in connection with the re-letting, the same would have been a proper element of her damages for the original lessee's breach of contract. *Camden Investment Company v. Gibson,* 204 S. C. 513, 30 S. E. (2d) 305. But in the absence of contractual or statutory liability therefor, attorney's fees are not recoverable as an item of damages. *Cf. First National Bank of Chillicothe v. McSwain,* 93 S. C. 30, 75 S. E. 1106; *Glenn v. Atlantic Coast Line R. Co.,* 96 S. C. 357, 80 S. E. 898. The testimony of Mr. McDavid is susceptible of no reasonable inference other than that the services rendered by the lessor's attorney were in connection with negotiating and drafting the new lease with Webster Oil Company, which was already in possession as sub-lessee, —services rendered as an attorney at law and not as a real estate agent.

We find in the record no competent evidence to support the lower court's holding that the lessee had expressly authorized or ratified the use of the deposit by the lessor in constructing the building on the demised premises. On the other hand, the lease contains no express provision for the safekeeping of the deposit, or for its investment, or for the payment or accumulation of interest on it, or even that the lessor keep it separate from her own funds. We are in agreement, therefore, with the Circuit Judge's conclusion that the lessee's receiver has not made out a case of conversion against the lessor, and that he is not entitled to either the judgment or the equitable lien recommended by the Master.

Respondent proposes as additional ground for sustaining the decree that the Circuit Judge could have held that the lessor was under no obligation to account for the deposit of $7,000.00 because it was either: (a) an absolute payment in consideration of the lease, and as such the property of the lessor; or (b) payment in advance of rent for the tenth year, and therefore forfeited because the lessee's right to require it to be so applied had been defeated by its own default. For the reasons before indicated, we do not think that either of these theories accords with the proper construction of the lease. Additionally, acceptance of either would necessitate a result quite different from that reached by the decree, for which reason respondent's suggestion is not appropriate as an "additional sustaining ground" under Section 7 of Rule 4 of this court.

Except as hereby modified, the judgment of the Circuit Court is affirmed; and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

Modified and remanded.

STUKES, C. J., and TAYLOR, OXNER and Moss, JJ., concur.