772 S.E.2d 882

**BLUFFTON TOWNE CENTER, LLC, Respondent,**

v.

**Beth Ann GILLELAND–PRINCE d/b/a The Law Office of Beth Ann Gilleland, LLC, Appellant.**

Appellate Case No. 2013–000305.
No. 5309.

Court of Appeals of South Carolina.

Heard Nov. 4, 2014.
Decided April 1, 2015.
Withdrawn, Substituted, and Refiled June 3, 2015.

Beth Ann Prince, pro se, for appellant.

Russell Pierce Patterson, of Russell P. Patterson, P.A., of Hilton Head Island, for respondent.

WILLIAMS, J.

In this civil matter, Beth Ann Prince (Tenant) appeals the master-in-equity's order awarding Bluffton Towne Center, LLC (BTC) $35,784 in rent and late fees for Tenant's breach of a commercial lease. Tenant argues the master erred in (1) finding the lease was terminated by abandonment; (2) finding Tenant was liable for future rents under the lease; (3) considering extrinsic evidence after finding the lease unambiguous; (4) not allowing Tenant to cross-examine Paul Watson, the managing member of BTC, about specific language in the subject lease and language in two subsequent leases BTC entered into with different parties; and (5) failing to recognize the lease was ambiguous. We affirm as modified.

## FACTS/PROCEDURAL HISTORY

On January 1, 2009, BTC entered into a commercial lease agreement with Tenant for office space in Bluffton, South Carolina. Under the three-year term lease, Tenant was required to make monthly rental payments of $1,825 from January 1, 2009, to December 31, 2011. At issue in this case is the default provision of the lease:

DEFAULTS. Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. Subject to any governing provisions of law to the contrary, if Tenant fails to cure any financial obligation within 10 days (or any other obligation within 30

days) after written notice of such default is provided by [BTC] to Tenant, [BTC] may take possession of the Premises without further notice (to the extent permitted by law), and without prejudicing [its] rights to damages. In the alternative, [BTC] may elect to cure any default and the cost of such action shall be added to Tenant's financial obligations under this Lease. Tenant shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by [BTC] by reason of Tenant's defaults. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent."

On December 18, 2009, Tenant emailed Watson to inform him she was closing her law practice. In the email, Tenant noted she would need to stay in the space through the end of January and "possibly some of February." She further stated, "I hope that you and I will be able to work something out amicably[ ] because I realize that the lease will not expire for another year. . . . I will also keep my eyes and ears open for anyone who may want the space." Watson responded to the email on the same day, stating he was not willing to forgive the remaining balance and assumed Tenant would honor her obligation under the lease.

On February 26, 2010, after Tenant defaulted on her rent payment for that month, Watson sent Tenant a written ten-day notice to pay or quit the premises. The notice stated, "You are hereby notified that you have ten (10) days to pay to the undersigned office rent now due from you in the amount of $1,875.00 as set forth below, or your right to possession of the . . . premises will cease and you must quit same." The notice further contained the following language:

In the event you do not satisfy all the requirements of this ten (10) day notice by paying . . . [$1,875] and do either voluntarily or by court leave the premises, you will still be obligated and responsible for payment of monies set forth below, together with any additional costs, legal fees, expenses[,] and rents that continue to accrue under the terms of the lease because of non-payment.

Tenant did not respond, and on March 28, 2010, BTC's counsel emailed Tenant requesting that she (1) remove all of her

possessions from the space, (2) pay the rent due for February and March 2010, (3) continue to make monthly payments until the space was relet, and (4) pass along the names of any potential tenants to BTC's rental agent. His email further stated if they could not reach an agreement along those lines, BTC would be forced to file an ejectment action and suit for back rent. In Tenant's email response, she explained that filing an ejectment action was unnecessary because she vacated the unit at the beginning of February 2010. Tenant further stated, "I am happy to assist in getting the place rerented, however, I am simply unable to pay the back rent, or else I would pay it."

BTC subsequently retrieved the keys from Tenant in April 2010. For the remainder of the lease term, BTC rented the unit to two separate tenants at reduced rates. In a March 9, 2012 letter, BTC's counsel informed Tenant she owed $34,850, but said he wanted to give her "an opportunity to try to work out a resolution of this matter" prior to filing an action for damages pursuant to the lease.

After the lease term expired, BTC filed suit for damages on April 16, 2012. The matter was tried before the master-in-equity for Beaufort County, South Carolina, on October 26, 2012.

At trial, Watson testified on behalf of BTC, and on cross-examination, Tenant questioned Watson regarding the sequence of events as well as the correspondence between the parties after Tenant defaulted under the lease. Tenant attempted to elicit testimony from Watson regarding specific language in the subject lease.

BTC objected to the line of questioning, arguing Tenant was improperly seeking Watson's legal interpretation of the lease, and the master sustained the objection. Tenant further tried to elicit testimony from Watson regarding language in two subsequent leases BTC entered into with different parties. BTC, however, objected on relevance grounds, and the master sustained the objection.

On December 26, 2012, the master issued an order granting judgment to BTC in the amount of $39,627.55. In his order, the master concluded the holding in *Simon v. Kirkpatrick*, 141 S.C. 251, 139 S.E. 614 (1927)—that a lessor's termination of

the lease absolves a lessee from future obligations unless the lease provides the lessee is not relieved of such obligations—"does not state the modern law of damages for the breach of a lease in South Carolina today." Instead, the master found *U.S. Rubber Co. v. White Tire Co.,* 231 S.C. 84, 97 S.E.2d 403 (1956), states the modern rule for damages a landlord may recover for a tenant's breach of the lease, holding Tenant was liable for future rents as damages under this rule. The master concluded in the alternative that, even if *Simon* remains valid law, BTC was still entitled to recover future rents because it reserved the right to all damages in the default provision of the subject lease. This appeal followed.

## ISSUES ON APPEAL

I. Did the master err in finding Tenant terminated the subject lease by abandonment?

II. Did the master err in finding that *Simon* is no longer valid law and, pursuant to the ruling in *U.S. Rubber,* Tenant was responsible for future rents as damages to BTC under the default provision in the subject lease?

III. Did the master err in considering extrinsic evidence after finding the subject lease was unambiguous?

IV. Did the master err in not allowing Tenant to cross-examine Watson regarding language in the subject lease as well as language in two subsequent leases BTC entered into with different parties?

V. Did the master err in failing to recognize the lease was ambiguous?

## STANDARD OF REVIEW

 "A lease agreement is a contract, and an action to construe a contract is an action at law." *Middleton v. Eubank,* 388 S.C. 8, 14, 694 S.E.2d 31, 34 (Ct.App.2010) (citations omitted). "An action for breach of contract seeking money damages is an action at law." *Sapp v. Wheeler,* 402 S.C. 502, 507, 741 S.E.2d 565, 568 (Ct.App.2013) (citing *Silver v. Aabstract Pools & Spas, Inc.,* 376 S.C. 585, 590, 658 S.E.2d 539, 541–42 (Ct.App.2008)). When reviewing a master-in-equity's judgment made in an action at law, "the appellate court will not disturb the master's findings of fact unless the findings are found to be without evidence reasonably supporting them."

*Silver,* 376 S.C. at 590, 658 S.E.2d at 542. Nevertheless, the "reviewing court is free to decide questions of law with no particular deference to the [master]." *Id.* (quoting *Hunt v. S.C. Forestry Comm'n,* 358 S.C. 564, 569, 595 S.E.2d 846, 848–49 (Ct.App.2004)) (internal quotation marks omitted).

## LAW/ANALYSIS

### I. Termination by Abandonment

 Tenant first argues the master erred in finding the subject lease was terminated by abandonment. According to Tenant, Watson's ten-day notice to pay or quit the premises was the equivalent of a termination by eviction. We disagree.

 Any act that involves the "direct deprivation of possession" or "so affects the tenant's enjoyment of the premises" that the tenant relinquishes possession is an eviction. *Thomas v. Hancock,* 271 S.C. 273, 275, 246 S.E.2d 604, 605 (1978) (citation omitted). The act, however, must provide the tenant with a legal justification for relinquishing possession. *Id.* (citation omitted). Conversely, a tenant's abandonment—or voluntary surrender of possession—of leased premises does not constitute an eviction. *See id.* at 275, 246 S.E.2d at 606 (citation omitted).

 Our supreme court has held "the relationship of landlord and tenant is terminated where the lessor, for his own purposes, re-enters and relets the demised premises upon the lessee's abandonment of the property and default in the payment of the rent." *Sur. Realty Corp. v. Asmer,* 249 S.C. 114, 119, 153 S.E.2d 125, 128 (1967) (citing *U.S. Rubber,* 231 S.C. at 95, 97 S.E.2d at 409). Nevertheless, "[w]hen a tenant delivers the keys of the leased premises to the landlord[,] and he receives them so as to be able to rent the premises for the account of the lessee, such is insufficient to terminate the lease or release the tenant from further liability for rent." *Id.* (citations omitted).

In the instant case, we find Tenant abandoned the leased premises. In a March 28, 2010 email, Tenant stated she had "vacated the unit at the beginning of February." She further explained that "[f]iling an ejectment action [was] simply unnecessary" because she had "been out of the unit for nearly

two months, as Mr. Watson requested." Moreover, Tenant voluntarily surrendered possession of the premises by turning over the keys to BTC in April 2010. Because Tenant returned her keys and admitted to voluntarily vacating the leased premises prior to the February 26, 2010 notice to pay or quit the premises, the record simply does not support her argument that BTC evicted her and terminated the lease via the notice.

Based on the foregoing, we find the master properly concluded that BTC terminated the subject lease upon Tenant's abandonment by reentering and reletting the premises.

## II. Damages Recoverable for Breach of a Commercial Lease

Next, Tenant argues the master erred in concluding *Simon* is no longer valid law and holding *U.S. Rubber* states the modern rule for damages recoverable for breach of a lease. While we agree the master erred in concluding *Simon* was overruled by *U.S. Rubber*, we find the master properly held BTC was entitled to recover future rents as damages under the theories of both *Simon* and *U.S. Rubber*.

### A. *Simon* Remains Valid Law

As a preliminary matter, we find the master erred in concluding the rule set forth in *Simon* is no longer a valid statement of the law.

In his order, the master concluded—without further explanation—that *Simon* is no longer valid and does not set forth "the modern law of damages for the breach of a lease in South Carolina today." The master, however, failed to cite any case in which a court overruled *Simon* or gave its ruling negative treatment. Indeed, a review of the relevant case law reveals that *Simon* has not been overruled and, in fact, courts have cited its propositions with approval. *See, e.g., U.S. Rubber*, 231 S.C. at 95, 97 S.E.2d at 409 (citing *Simon* for the proposition that, upon the lessor's reentry and reletting of the premises following the lessee's abandonment of the property, the lessor-lessee or landlord-tenant relationship came to an end); *Camden Inv. Co. v. Gibson*, 204 S.C. 513, 518–19, 30

S.E.2d 305, 307 (1944) (citing *Simon* as outlining the proper elements of damages available for breach of a lease contract).

Therefore, contrary to the master's findings, we hold that *Simon* remains valid law.

### B. Liability Under *Simon* and *U.S. Rubber*

■ Although the master erred in concluding *Simon* is no longer valid law, we find he correctly concluded—in the alternative—that BTC was entitled to recover future rents under the damages term in the lease pursuant to *Simon*. Accordingly, we affirm as modified the portion of the master's order in which he analyzed the validity and applicability of *Simon*'s holdings to the facts of this case.

In *Simon*, the lessor entered into a three-year written contract under which he leased a vacant lot to the lessee. 141 S.C. at 253, 139 S.E. at 615. The lease contained the following default provision:

> It is agreed that if there is default in the payment of rent above stipulated for as much as 60 days after same is due, ... [the lessor] shall have the right to re-enter and repossess said premises, at his option[,] and to expel and remove therefrom ... [the lessee] or any other person occupying the same.

*Id.* at 254, 139 S.E. at 615. After the lessee refused to take possession of the leased premises and defaulted on the payment of two months' rent, the lessor gave notice that he was terminating the lessee's rights under the lease and reentered the premises. *Id.* at 261, 139 S.E. at 618. The lessor's notice stated the following: "You are due me two (2) months' rent at one hundred and fifty dollars ($150) each as of September 1, 1924, you having failed to make payment as per terms of lease, are thereby precluded from any further right or benefit thereunder." *Id.* at 254–55, 139 S.E. at 615–16. When the lessee refused to pay the three years of rent due under the lease, the lessor filed an action against him for breach of contract. *Id.* at 253–54, 139 S.E. at 615.

Because the lessee in *Simon* never took possession of the premises and notified the lessor he did not intend to do so, our supreme court concluded the landlord-tenant relationship was never consummated and the parties' relationship, instead, was

that of lessor and lessee under a written lease contract. *Id.* at 256, 139 S.E. at 616. The court further found it was clear that, when the lessee refused to fulfill his obligation under the lease by taking possession of the lot, he breached the contract and became liable to the lessor for damages resulting from the breach. *Id.* at 258, 139 S.E. at 617.

Moreover, the court stated "[t]he measure of damages is the difference between the rent fixed in the lease and the rental value of the premises for the entire term, at the time of the breach, together with such special damages as [the lessor] may prove to have resulted from the breach." *Id.* at 259, 139 S.E. at 617. In addition to this option, the court stated the lessor could have waited until the term expired and, "upon a showing of reasonable efforts to minimize his damage, sued for the damage actually sustained, the agreed rental less rental which he had in the meantime received or with proper effort should have received." *Id.*

The lessor in *Simon,* however, was not required to adopt any of the above-mentioned remedies because the default provision of the lease provided for one. *Id.* In fact, as the court noted, the lessor chose to adopt the remedy provided for in the lease by sending the notice, precluding the lessee from any further rights or benefits under the lease. *Id.* at 259–60, 139 S.E. at 617. Because the lessor chose this method, the court found it was illogical and unfair to preclude the lessee from all rights and benefits under the lease, while simultaneously holding him liable for future obligations under it. *Id.* at 260, 139 S.E. at 617. According to the court, the applicable rule provides as follows:

> [T]he termination of a lease does not absolve the lessee from obligations incurred up to the date of termination, but it does absolve him from future obligations, unless the lease shall provide that, notwithstanding this termination for cause by the lessor, the lessee shall not be relieved of such future obligations. The lease in the case at bar does not carry a provision to the effect mentioned.

*Id.* at 262, 139 S.E. at 618 (citation omitted).

Unlike the provision at issue in *Simon,* the default provision in the subject lease expressly reserved BTC's right to recover all damages resulting from Tenant's breach after reentering

the premises. The default provision in this case provides, in relevant part, that BTC "may take possession of the Premises ... without prejudicing [its] rights to damages.... Tenant shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by [BTC] by reason of Tenant's default."

More importantly, unlike Tenant in this case, the lessee in *Simon* never actually took possession of the premises prior to the lessor sending a notice terminating his rights under the lease. The court in *Simon* was notably concerned with precluding the lessee from enjoying any rights and benefits under the lease, while also holding him responsible for the future obligations under it. In the instant case, however, Tenant occupied the leased premises for several years and renewed the subject lease prior to defaulting on rent payment and breaching the lease. Further, Tenant voluntarily abandoned the premises prior to Watson's notice to pay or quit, the effect of which was not to preclude her from entering the premises or exercising any rights or benefits under the lease.

The court in *Simon* found it would be unfair to hold the lessee "to a liability against which he could not have protected himself" when the lessor withdrew any consideration for the lessee's promise to pay rent and was enjoying the premises for his own benefit. *Id.* at 260–61, 139 S.E. at 617–18. The same cannot be said for the instant case. In fact, we believe it would be unfair to allow Tenant to simply abandon the leased premises and terminate rent payments at her own leisure— thereby breaching a written lease contract—without any consequence for such actions. In any event, we find that, under the rule in *Simon*, the default provision in the subject lease adequately provided for BTC's right to recover all damages upon Tenant's default in rent payments and breach of the lease.

Likewise, in *U.S. Rubber*, our supreme court faced a situation in which the lessor terminated the lease by reentering and reletting the property after the lessee abandoned the premises and defaulted in the payment of rent. 231 S.C. at 95, 97 S.E.2d at 409. Citing *Simon*, the court first noted that the landlord-tenant relationship came to an end upon termination of the lease and the tenant had no further obligation to

the landlord for future rent thereafter. *Id.* (citing *Simon*, 141 S.C. at 261, 139 S.E. at 618). While the tenant no longer had an obligation for future rents, the court stated the tenant was still liable for damages resulting from its breach of contract. *Id.* The court explained that the measure for such damages was "the amount [the landlord] would have received as rent for the remainder of the term, had there been no default, less such amount as [it] may receive from the new tenant" because it was the landlord's duty to minimize any damages. *Id.* (citation omitted).

After a thorough review of the case law, we agree with BTC's contention that the above statement in *U.S. Rubber* is more reflective of the modern rule for damages recoverable upon the breach of a lease. In concluding the landlord was entitled to recover damages due to the tenant's breach of contract, we find our supreme court in *U.S. Rubber* was merely expanding upon the *Simon* ruling and explaining a theory that has been adopted in this state as well as other jurisdictions. *See, e.g., Richman v. Joray Corp.*, 183 F.2d 667, 671 (4th Cir.1950) ("It is the rule in South Carolina that when a lessee declines to perform his contract, a cause of action immediately arises in favor of the lessor for full damages, present and prospective, which were the necessary and direct result of the breach; and the measure of the damages is the difference between the rent fixed in the lease and the rental value of the premises for the entire term at the time of the breach, together with such special damages as may have resulted from the breach."). Therefore, we hold that *Simon* and *U.S. Rubber* are not mutually exclusive of one another and may be read together.

Although the landlord-tenant relationship was terminated by Tenant's abandonment and BTC's reentry and reletting of the premises in the instant case, we find this sequence of events did not affect Tenant's contractual liability to BTC under the lease. Accordingly, we find the master properly concluded BTC was entitled to damages measured by the amount BTC would have received as rent for the remainder of Tenant's term had there been no default, less the amount of rent BTC received from the two subsequent tenants it acquired in an effort to mitigate damages. *See U.S. Rubber*, 231 S.C. at 95, 97 S.E.2d at 409.

Because we find BTC was entitled to recover under the theories of both *Simon* and *U.S. Rubber,* we affirm the master's ruling as modified.

## III. "Damages" Term in the Subject Lease

■ Additionally, Tenant argues the master erred in construing the "damages" term in the subject lease to entitle BTC to recover future rents. We disagree.

■ Courts should construe contracts liberally "to give them effect and carry out the intention of the parties." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC,* 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct.App.2007) (citation omitted). When construing terms in a contract, a court "must first look at the language of the contract to determine the intentions of the parties." *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n,* 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988) (citation omitted). Furthermore, a court must gather the parties' intention from the contents of the entire agreement, not from any particular clause therein. *Ecclesiastes Prod. Ministries,* 374 S.C. at 498, 649 S.E.2d at 502 (citation omitted). If practical, a court should interpret the agreement so as to give effect to all of its provisions. *See id.* (citation omitted). "It is fundamental that[,] in the construction of the language of a contract, it is proper to read together the different provisions therein dealing with the same subject matter, and where possible, all the language used should be given a reasonable meaning." *Id.* at 498–99, 649 S.E.2d at 502 (quoting *Brady v. Brady,* 222 S.C. 242, 246, 72 S.E.2d 193, 195 (1952)). Generally, a contract is "interpreted according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense." *Stanley v. Atlantic Title Ins. Co.,* 377 S.C. 405, 414, 661 S.E.2d 62, 67 (2008) (citing *Ingram v. Kasey's Assocs.,* 340 S.C. 98, 110, 531 S.E.2d 287, 293 (2000)).

We find the master properly concluded the parties clearly and unambiguously intended for BTC to reserve all rights against Tenant for rents due during the full term of the lease. Unlike the lease at issue in *Simon,* the subject lease stated BTC could reenter and repossess the property without prejudicing its right to damages. Because the term "damages" was

not specifically defined in the lease, the master had to first look to the four corners of the subject lease to determine the meaning and effect the parties intended to give the term. Not only did the lease reserve BTC's right to recover damages upon termination, but it also provided a specific damages formula in the default provision stating Tenant must pay all costs, damages, and expenses BTC suffers by reason of Tenant's default. The default provision further made clear that, upon termination of the lease, Tenant was not relieved of future obligations for damages resulting from her breach of the lease.

Reading the lease as a whole, we find the parties clearly and unambiguously intended that, upon default, Tenant would be liable to BTC for the rents due during the full term as damages. The "costs, *damages,* and expenses ... suffered by [BTC] by reason of Tenant's defaults" undoubtedly includes the rent BTC was unable to recover during the remainder of the subject lease term due to Tenant's default. We find no other construction would provide full meaning to all of the terms in the lease.

Accordingly, we affirm the master's finding that BTC was entitled to recover future rents as damages from Tenant under the default provision of the lease.

## IV. Extrinsic Evidence

Tenant also argues the master erroneously considered extrinsic evidence regarding the parties' intent after finding the subject lease was unambiguous. While we agree the master erred in admitting extrinsic evidence, we believe such error was harmless.

In construing or interpreting a contract, "it is axiomatic that the main concern of the court is to ascertain and give effect to the intention of the parties." *Progressive Max Ins. Co. v. Floating Caps, Inc.,* 405 S.C. 35, 46, 747 S.E.2d 178, 184 (2013) (quoting *D.A. Davis Constr. Co. v. Palmetto Props., Inc.,* 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984)) (internal quotation marks omitted). "If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect." *Id.*

(citation omitted). Moreover, "[i]f a contract is unambiguous, extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms." *Watson v. Underwood,* 407 S.C. 443, 455, 756 S.E.2d 155, 161 (Ct.App.2014) (quoting *Bates v. Lewis,* 311 S.C. 158, 161 n. 1, 427 S.E.2d 907, 909 n. 1 (Ct.App.1993)) (internal quotation marks omitted); *see also Gordon Farms, Inc. v. Carolina Cinema Corp.,* 294 S.C. 158, 160, 363 S.E.2d 235, 237 (Ct.App. 1987) ("No authority is needed for the proposition that extraneous evidence is not admissible to alter or vary the terms of an unambiguous written contract.").

 "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary[,] or explain the written instrument." *McGill v. Moore,* 381 S.C. 179, 188, 672 S.E.2d 571, 576 (2009) (citing *In re Estate of Holden,* 343 S.C. 267, 275, 539 S.E.2d 703, 708 (2000)). "Where a written instrument is unambiguous, parol evidence is inadmissible to ascertain the true intent and meaning of the parties." *Id.* (citing *Holden,* 343 S.C. at 275–76, 539 S.E.2d at 708). Under the parol evidence rule, the terms of the writing are controlling, even if extrinsic evidence is admitted without objection or admitted over appropriate objection. *Adams v. Marchbanks,* 253 S.C. 280, 282, 170 S.E.2d 214, 215 (1969) (citations omitted).

 In construing a master's order, an appellate court must do so in light of the master's intent "as discerned from the order as a whole." *White's Mill Colony, Inc. v. Williams,* 363 S.C. 117, 123 n. 1, 609 S.E.2d 811, 814 n. 1 (Ct.App.2005). "Adhering to this principle, this court has refused to hold parties bound by language in a lower court order that we found was not necessary to the decision of the issues presented." *Id.* (citing *Weil v. Weil,* 299 S.C. 84, 90, 382 S.E.2d 471, 474 (Ct.App.1989)).

 In this case, the master interpreted the default provision of the lease in paragraph 17 of his order and specifically reached the following conclusions:

A more clear, unambiguous intention to reserve all rights against [Tenant] for the rents due during the full term is

more difficult to imagine. Not only did [BTC] specifically reserve its right to damages (i.e., the recovery of future rents in the event of termination), but the lease provided a specific damage formula by providing [Tenant] must pay all costs, damages[,] and expenses as a result of default. It is clear the most critical, common[,] and obvious "damages" suffered by a [landlord] under a commercial lease is the payment of rent, which is the primary monetary obligation of the [tenant]. No other construction would provide full meaning to all of the terms of the Lease.

In paragraphs 18(a)-(c) and 19, however, the master discussed the correspondence between the parties, noting it was further evidence that BTC and Tenant construed the subject lease as an obligation for Tenant to pay future rents. Tenant argues that, by referencing certain testimony and exhibits to support his interpretation of the lease, the master erred in considering extrinsic evidence outside the four corners of the contract. We agree, but we find the master's error was harmless.

Based upon our review of the order as a whole, we find any error in considering extrinsic evidence was harmless because it is reasonable to infer the master was simply setting forth alternative grounds for his interpretation of the contract. *See Williams*, 363 S.C. at 123 n. 1, 609 S.E.2d at 814 n. 1 (noting that, in construing a judge's order, an appellate court must do so in light of the judge's intent "as discerned from the order as a whole"); *Laser Supply & Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 336, 676 S.E.2d 139, 145 (Ct.App.2009) (stating it was "reasonable to infer that the circuit court was setting forth alternative grounds for its interpretation of the contract" by referencing certain testimony and exhibits in its order). Furthermore, the master's interpretation—based on the extrinsic evidence presented at trial—was consistent with the contract's language. *See Laser Supply*, 382 S.C. at 336, 676 S.E.2d at 145; *see also Jensen v. Conrad*, 292 S.C. 169, 172, 355 S.E.2d 291, 293 (Ct.App.1987) (holding a judgment will not be reversed for insubstantial errors that do not affect the result).

Accordingly, while the master erred in referencing extrinsic evidence in his order, we find the master was merely setting forth alternative grounds for his interpretation that the damages term in the lease unambiguously entitled BTC to future

rents. Thus, we affirm the master's conclusion on this point because any error in referencing the extrinsic evidence was harmless, particularly when the master's interpretation was consistent with the contract's language.

## V. Tenant's Cross–Examination of Landlord

Tenant further argues the master abused his discretion by not allowing her to cross-examine Watson about language in the subject lease as well as language in two subsequent leases BTC entered into with different parties. We disagree.

### A. Language in the Subject Lease

■ Tenant contends the master erred in sustaining BTC's objection to the line of questioning during her cross-examination of Watson regarding BTC's intent behind specific language in the subject lease. Tenant argues that, because the master considered extrinsic evidence in reaching his decision, he abused his discretion by not allowing her to introduce evidence regarding intent. We find this issue is not properly preserved for appellate review.

■ "An issue is deemed abandoned if the argument in the brief is not supported by authority or is only conclusory." *Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 24, 716 S.E.2d 123, 127 (Ct.App.2011); *see also S.C. Dep't of Soc. Servs. v. Mother*, 375 S.C. 276, 283, 651 S.E.2d 622, 626 (Ct.App.2007) (finding an issue abandoned because the appellant made "a conclusory argument without citation of any authority to support her claim"); *Hunt v. S.C. Forestry Comm'n*, 358 S.C. 564, 573, 595 S.E.2d 846, 851 (Ct.App.2004) ("Issues raised in a brief but not supported by authority are deemed abandoned and will not be considered on appeal.").

In her brief, Tenant merely provided a recitation of the trial transcript and made a conclusory argument, while citing no legal authority to support her claim. Therefore, we find this issue is abandoned and not preserved for appellate review. *See Hunt*, 358 S.C. at 573, 595 S.E.2d at 851.

### B. Language in Two Subsequent Leases

■ Tenant next contends the master erred in sustaining BTC's objection to the line of questioning during her cross-

examination of Watson regarding language in two subsequent leases BTC entered into with two different tenants. Specifically, Tenant claims the master improperly sustained BTC's objection "on the grounds of inadmissibility as a subsequent remedial measure" pursuant to Rule 407, SCRE.[1] We find this issue is not properly preserved for appellate review.

Because the master clearly sustained BTC's objection on relevance grounds, Tenant's argument that he committed legal error by sustaining the objection pursuant to Rule 407, SCRE, is without merit. Aside from Rule 407, Tenant failed to cite any authority in support of her conclusory argument that the master erred in sustaining BTC's objection. Therefore, we find this issue is abandoned and not preserved for appellate review. *See Hunt*, 358 S.C. at 573, 595 S.E.2d at 851.

## VI. Ambiguity

Finally, Tenant argues the master erred by failing to recognize the lease terms were ambiguous. We disagree.

In light of our holding in Part III, *supra*, we find the master properly concluded the subject lease was unambiguous.[2] After reading the subject lease as a whole, we find the parties clearly and unambiguously intended that—upon Tenant's default and breach of the lease—Tenant would be liable to BTC for the rents due during the full term as damages. *See Cullen v. McNeal*, 390 S.C. 470, 483, 702 S.E.2d 378, 385 (Ct.App. 2010) ("In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." (citation and internal quotation marks omitted)); *Ecclesiastes Prod. Ministries*, 374 S.C. at 497, 649 S.E.2d at 501 (stating a court must gather the parties' intention from the contents of

---

1. Under Rule 407, SCRE, "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

2. Tenant also argues the master erred in not construing ambiguous terms against the drafter of the lease. In light of our finding that the contract was unambiguous, we need not reach the second prong of Tenant's argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

the entire agreement, not from any particular clause therein (citation omitted)); *id.* at 500, 649 S.E.2d at 503 ("The court must enforce an unambiguous contract according to its terms, regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully." (citations omitted)).

## CONCLUSION

Based on the foregoing analysis, the master's decision is **AFFIRMED AS MODIFIED.**

GEATHERS and McDONALD, JJ., concur.