**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jerry Powers, Appellant,

v.

Rizan Properties LLC, Anthony Pearson, and Tiesha Dash, Defendants,

of which Rizan Properties LLC is the Respondent.

Appellate Case No. 2021-001058

———

Appeal From Greenville County
Charles B. Simmons, Jr., Master-in-Equity

———

Unpublished Opinion No. 2022-UP-439
Submitted November 17, 2022 – Filed December 7, 2022

———

**REVERSED AND REMANDED**

———

Mark Paget Fessler, of S.C. Legal Services, of
Greenville, for Appellant.

Knox L. Haynsworth, III, of Brown Massey Evans
McLeod & Haynsworth, LLC, of Greenville, for
Respondent.

———

**PER CURIAM:** Jerry Powers filed suit against Rizan Properties, LLC (Rizan) for specific enforcement of an option contract to purchase a single-family home. Rizan counterclaimed for damages, alleging Powers failed to pay rent and maintain the property pursuant to the terms of a residential lease agreement involving the same property. The parties agreed to refer the case to the Greenville County Master-in-Equity. Following a hearing on the counterclaim, the Master awarded Rizan judgments against Powers of $6,351 for past due rent and late payments and $31,960 for damages to the property.[1] Powers appeals. We reverse and remand.

On May 1, 2013, Powers, his girlfriend Jackie Pearson, and Lukas Rigdon, the sole member and manager of Rizan, executed both the option contract and the residential lease. The lease provided Powers and Pearson would rent the subject property from Rizan for $550 per month for a period of eight years and noted they would pay a total of $52,800 in rent while the lease was in effect.

The option contract stated Rizan, the grantor of the option, had received a separate consideration of $550 from Powers and Pearson, the grantees, which entitled Powers and Pearson to buy the subject property at any point during the following eight years. Upon the grantees' exercise of the option, Rizan would sell them the property for a total price of $52,800, and all rent paid under the lease would be credited against this price. Although the lease stated a total amount of rent to be paid during its duration that equaled the purchase price recited in the option, it did not otherwise reference the option. Similarly, except for a provision that "$550.00 of each month's rent paid would be applied to the purchase price at closing," the option did not reference the lease. Furthermore, neither document indicated a breach of the lease would prevent the grantees from exercising the option.

Under Article VII of the lease, Powers and Pearson agreed to assume responsibility for "the maintenance of the structure of the house and the major systems (electrical, plumbing, hearing, and air)" unless the damage at issue resulted from the negligence of Rizan or one of its agents.

In 2015, a tree limb fell onto the back of the house. Powers informed Rigdon about the incident, and Rigdon gave Powers a credit of $1,200 toward his rent

---

[1] The parties also filed cross-motions for summary judgment on Powers's action to enforce the option contract. Prior to the hearing on Rizan's counterclaim, the Master issued an order granting Rizan's summary judgment motion and holding Powers had no further rights in the property. Powers appealed that order to this court as well, and that appeal was assigned appellate case number 2021-000218.

payments in exchange for removing the tree from the roof.  Later, however, Powers noticed brown spotting on the laundry room ceiling and informed Rigdon about the problem, but Rigdon refused to make any repairs and asserted Article VII of the lease agreement absolved him of this responsibility.  Powers attempted to repair the damage himself, but lacked the funds to do this immediately.  As a result of the delay, the house suffered additional damage from a bad storm, and Rigdon again refused to remedy the situation.  Powers hired a neighbor to help him make extensive repairs to the laundry room and bathroom of the house.  He maintained he saw only occasional leaks in the bedroom area after the repairs were made, and he placed a tarp in the attic area to prevent these leaks from dripping onto his bed.

Powers testified Rigdon told him and Pearson in late 2018 the property had to be sold because Rigdon was behind on his alimony and child support payments and owed money on a medical bill.  On December 3, 2018, Rigdon sent Powers and Pearson an eviction notice advising eviction was being pursued for nonpayment of rent and damages to the house.  Pearson agreed to leave the residence by January 6, 2019, but Powers initially refused to vacate the premises.  Two weeks later, however, Powers had a heart attack and was hospitalized.  He later moved in with Pearson at her new residence to help her with her rent payment, but never intended to relinquish his option to purchase the subject property.  At Pearson's urging, Powers returned his keys to the property to Rigdon; however, he testified he wanted to "remain living in" the home.  Powers acknowledged his last rent payment to Rizon was in January 2019.

Rigdon committed suicide on March 21, 2019, and his former wife was appointed personal representative for his estate on April 25, 2019.  Pearson died on July 1, 2019.  In October 2019, Powers, through his attorney, informed the attorney representing Rigdon's estate he was exercising his option to purchase the property.  The parties, however, were unable to come to an agreement about the matter, and Powers sued for specific performance on April 10, 2020.  Rizan counterclaimed for back rent, damage to the property, and other relief.

In awarding Rizan a judgment against Powers for damaging the property, the Master found that under Article VII of the lease, maintenance of the structure of the house was the responsibility of the lessee.  The Master also noted Powers, instead of contesting or objecting to Rigdon's interpretation of this provision, made repairs that proved insufficient.  Based on these circumstances, the Master found Article VII required Powers to assume responsibility for the necessary repairs to the roof and he was liable for performing these repairs negligently.  We hold this was an error of law.  *See Bluffton Towne Ctr., LLC v. Gilleland-Prince*, 412 S.C.

554, 562, 772 S.E.2d 882, 887 (Ct. App. 2015) (stating an appellate court, when reviewing a master's decision in an action at law, is free to decide questions of law with no particular deference to the master even though the court must apply a deferential standard when reviewing the master's factual findings).

The South Carolina Residential Landlord and Tenant Act (the Act) requires landlords to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." S.C. Code Ann. § 27-40-440(a)(2) (2007). Under the Act, landlords are also responsible for "maintain[ing] in reasonably good and safe working order and condition all electrical, gas, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances . . . ." § 27-40-440(a)(5).

Although section 27-40-440(c) allows the landlord and tenant of a single-family residence "to agree in writing that the tenant perform the landlord's duties specified in [section 27-40-440(a)(5)] and also specified repairs, maintenance tasks, alterations, and remodeling," such an agreement must be "entered into in good faith and not for the purpose of evading the obligations of the landlord." Similarly, as Rizan notes in its brief, the Act allows "[a] landlord, from time to time, [to] adopt rules or regulations, however described, concerning the tenant's use and occupancy of the premises"; however, such rules and regulations are not enforceable if they are not "sufficiently explicit in their prohibition, direction, or limitation of the tenant's conduct to fairly inform him of what he must do or must not do to comply" or they are "for the purpose of evading the obligations of the landlord." S.C. Code Ann. § 27-40-520(a) (2007).

The Act also prohibits a rental agreement from requiring a tenant to waive or forego rights or remedies under the Act and states such provisions are unenforceable. S.C. Code Ann. § 27-40-330(a)(1) and (b) (2007). Furthermore, "[i]f a landlord deliberately uses a rental agreement containing provisions known by him to be prohibited and attempts to exercise the rights created by the agreement, the tenant may recover in additional to his actual damages an amount not to exceed the security deposit and reasonable attorney's fees." § 27-40-330(b).

Based on this strong anti-waiver policy adopted by the Legislature, we hold Article VII was unenforceable against Powers and the master erred as a matter of law in relying on this provision in finding Powers liable for damages to the home. *See Bluffton Towne Ctr.*, 412 S.C. at 562, 772 S.E.2d at 887 (stating an appellate court, when reviewing a master's decision in an action at law, is free to decide questions of law with no particular deference to the master even though the court must apply

a deferential standard when reviewing the master's factual findings). In requiring the lessee to assume responsibility for the structural maintenance of the leased premises, Article VII was in violation of section 27-40-330(a)(1), which prohibits residential lease agreements from requiring lessees to "waive or forego rights or remedies under this chapter," including the right under section 27-40-440(a)(2) to expect their lessors to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." Furthermore, the requirement lacked the specificity necessary to be enforceable under section 27-40-520(a)(4). Therefore, we hold Rizan was responsible for repairing the damage that resulted when the tree limb fell onto the roof of the home. Accordingly, we reverse the Master's order and remand the matter for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**[2]

**KONDUROS, HEWITT, and VINSON, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.